[S. F. No. 710. Department One.—February 5, 1898.]

## MARGARET E. WALSH, Respondent, v. EMMA E. HUNT, Appellant.

ALTERATION OF NOTE AND MORTGAGE—FRAUD OF AGENT OF MORTGAGEE—LIMITATION OF AUTHORITY—OSTENSIBLE AGENCY—FORGERY NOT INCLUDED.—Authority conferred upon a real estate agent and notary public by a mortgagor to negotiate a loan for five hundred dollars, to pay off an existing mortgage of that amount, and to deliver another note and mortgage for the same amount to the person from whom the loan should be secured, does not confer actual or implied or ostensible authority upon such agent to commit the crime of forgery by fraudulently altering and increasing the amount of the principal and interest of the new note and mortgage, after their execution and prior to their delivery, for his own benefit, in order that he might fraudu-

lently appropriate an excess of the principal sum obtained from the mortgagee.

Id.—EFFECT OF ALTERATION OF INSTRUMENT—BONA FIDE HOLDER NOT PRO-TECTED.—Any unauthorized change in an instrument in a material respect destroys the integrity of the instrument as the contract which the maker has executed, and it ceases to be his contract, and is avoided in the hands of an innocent holder for value; and this rule applies to commercial paper, as well as to deeds and other sealed instruments.

Id.—NEGLIGENCE—EXECUTION OF NOTE AND MORTGAGE WITH AMOUNT IN PEN-CIL—OCCASION FOR FRAUDULENT ALTERATION—ESTOPPEL.—The execution of the note and mortgage by the mortgagor, with the amount of principal and interest written therein by the agent in pencil, cannot be said to constitute negligence of itself; and, notwithstanding that fact may have afforded occasion for the criminal alteration of the note and mortgage by the agent, the mortgagor was not thereby estopped, nor bound to anticipate or guard against the commission of a crime by the agent.

Id.—PROXIMATE CAUSE OF INJURY TO MORTGAGEE—MAXIM INAPPLICABLE.—The proximate cause for the injury to the mortgagee as the result of the fraudulent alteration by the agent of the amount written by him in pencil was the crime of the agent, and not any negligent act on the part of the mortgagor in executing the note and mortgage; and in such case, the maxim that where one of two innocent persons must suffer from the wrongful act of another, the loss must fall upon the one making the loss possible, has no application.

Id.—EFFECT OF ALTERATION BY THIRD PERSON—RECOVERY UPON ORIGINAL CONTRACT.—The general rule that any material alteration in the contract avoids it even in the hands of innocent holders, and prevents recovery upon it to any extent, has application to cases where the altera-tion is by the payee or party seeking to enforce it; but that rule does not apply in cases where the alteration is by a stranger to the contract, without the knowledge or consent of either party, in which case the alteration amounts to a spoliation merely which will not prevent recovery upon the contract according to its original terms, where those terms can be ascertained.

APPEAL from a judgment of the Superior Court of Santa Clara County.  John Reynolds, Judge.

The facts are stated in the opinion of the court.

William P. Veuve, and R. R. Seyer, for Appellant.

John H. Yoell, for Respondent.

VAN FLEET, J.—Action to foreclose a mortgage.  The find-ings show that defendant, who resided in San Francisco, but owned certain premises in San Jose upon which there was a

mortgage for five hundred dollars, some time prior to October 3, 1893, authorized one Hughes, a real estate agent and notary public in San Jose, to negotiate a loan of five hundred dollars on said premises, at a rate of interest not to exceed eight per cent per annum, with the proceeds of which to pay off said mortgage; that, being notified by Hughes that he had found a person willing to make the loan, defendant, on October 3, 1893, went to his office in San Jose to execute the necessary note and mortgage; she was informed by Hughes that the loan could not be had for less than nine per cent, which rate she consented to pay, and thereupon Hughes presented for her signature a note and mortgage prepared by him, which defendant, after reading, signed and executed, the mortgage being acknowledged before Hughes as notary.   The note was in these words:

"$500.                    San Jose, Cal., October 3, 1893.

"Two years after date, for value received, I promise to pay to Mrs. Margaret Walsh, or order, at the office of G. C. Hughes, the sum of five hundred ($500) dollars, with interest thereon from date until payment at the rate of nine (9) per centum per annum, payable quarterly, and, if not so paid, then to be added to and become a part of the principal and bear a like interest, said principal and interest to be paid in United States gold coin only. If any interest on this note be not paid within two months after it becomes due, then the whole principal and interest shall, at the option of the payee, become and be immediately due and payable.   Privilege to pay at any time by paying three months' interest extra.   This note secured by mortgage.

"MRS. EMMA E. HUNT."

The mortgage was in the usual form, setting out at length a copy of the note, etc.

It is found "that, after signing the said note and mortgage as aforesaid, the said defendant left the same with the said Hughes for delivery to the said plaintiff, and returned to her home in San Francisco.   That the principal sum of said note wherever expressed in said note and mortgage, and the rate of interest wherever specified therein, had been written in pencil by said Hughes at the time he prepared said note and mortgage, and prior to the said visit of said defendant to the office of said Hughes on said third day of October, 1893.   That after said defendant had

left said office of said Hughes as aforesaid, the said Hughes erased said pencil words and figures expressing the principal sum of said promissory note and mortgage and the rate of interest thereon, and wrote in lieu thereof with pen and ink the necessary words and figures to make the principal sum of said note and mortgage twelve hundred dollars instead of five hundred dollars, and the rate of interest ten per cent instead of nine per cent."

In all other respects than as thus changed the note and mortgage remained as when executed by defendant. Thereafter, on the same day, Hughes delivered both instruments as thus altered by him to the plaintiff, and in return received from her the sum of twelve hundred dollars in gold coin, five hundred dollars of which he paid in satisfaction of said prior mortgage, and the balance of seven hundred dollars he retained and fraudulently converted to his own use. Both plaintiff and defendant were ignorant of the alteration of said instruments until about one year after their execution, when Hughes absconded, and they subsequently met for the first time.

Upon these facts the court below gave judgment for plaintiff foreclosing her mortgage for the full amount of said note, principal and interest as expressed therein after such alteration, and from this judgment and an order denying her a new trial defendant appeals.

It appears from the briefs and arguments of counsel that the considerations actuating the court below in reaching its conclusion were: 1. That Hughes being the agent of defendant in the transaction, the latter is bound by his acts, whether expressly authorized or not; 2. That defendant was guilty of such negligence in the execution of the note and mortgage as that Hughes was enabled to perpetrate the fraud which deceived the plaintiff, and that defendant is therefore estopped from setting up such fraud as a defense; and these are the two substantive propositions upon which respondent now relies to sustain the judgment.

Neither proposition, as it seems to us, receives any adequate support from the findings. Hughes was defendant's agent, it is true, and for his acts as such she is bound; but what was the extent of that agency? He was authorized to find a party willing to make the loan, which he did, and thereupon, as found by the

court, the note and mortgage complete in all their parts were executed by defendant and left by her with Hughes "for delivery to the said plaintiff"; this, then, was the extent of his express authority as to those instruments, that of a mere bailee for delivery. There is certainly no express finding of any authority to alter or tamper with the instruments in any respect, and as certainly there is nothing in the facts from which such authority could be implied. Where there is no express authority in the person to whom a note or other instrument is intrusted or delivered to make alterations therein, it is only where such writing is patently incomplete in some respect, such as an omitted date, or a blank space required to be filled to make the contract express the intent of the parties, that there is any implied authority to insert new matter, or make any material addition thereto. Even in such a case the implication must very plainly arise from the circumstances, or the maker will not be bound. This is upon the very obvious principle that any unauthorized change in a material respect destroys the integrity of the instrument as the contract which the maker has executed; it ceases to be his contract and is avoided, even in the hands of an innocent holder for value. These principles are thoroughly well settled, not only as to deeds and other sealed instruments, but as to commercial paper as well. (*Angle v. Northwestern etc. Ins. Co.*, 92 U. S. 330; *McGrath v. Clarke*, 56 N. Y. 34; 15 Am. Rep. 372; *Bruce v. Wescott*, 3 Barb. 374; *Woods v. Steele*, 6 Wall. 80; *Greenfield Sav. Bank v. Stowell*, 123 Mass. 196; 25 Am. Rep. 67.)

Nor can it make any difference that the alteration is made before delivery of the instrument. (*Wood v. Steele, supra.*) Manifestly, whether made before or after that fact, if the alteration be effected by other than the party to be bound, and without his knowledge or consent, it involves the same question of ostensible agency as when made after delivery. In either case the question is whether, under the circumstances, the person making the alteration is to be deemed the agent of the one whose contract is affected. Here, while Hughes was admittedly the agent of defendant for certain purposes, as found by the court, it would be absurd to hold that there was upon the facts any implied or ostensible authority conferred upon him to commit a forgery—the plain legal effect of his act—and bind the defendant thereby.

The assumed negligence of defendant is based upon that part of the finding above quoted, "that the principal sum of said note, wherever expressed in said note and mortgage, and the rate of interest, wherever specified therein, had been written in pencil by said Hughes at the time he prepared said note and mortgage, and prior to the said visit of said defendant to the office of said Hughes"; and the implication, not expressly found as. a fact, that defendant signed and executed the instruments in that condition. The respondent's argument is, that by her act in executing the papers in that condition, and leaving them with Hughes, she enabled or facilitated the successful perpetration of the fraudulent alteration by which plaintiff was deceived into accepting the note and mortgage, and therein was guilty of such negligence as precludes her pleading such alteration to plaintiff's prejudice; upon the principle that where one of two innocent persons must suffer, the loss must fall upon the one through whose negligence the injury was occasioned.

The appellant contends that the evidence is wholly insufficient to sustain this feature of the finding; and, if the point were essential to the determination of the case, we should be constrained to adopt this view. But, assuming that mere negligence could ever in such a case be a bar to the defense here made, the fact found does not establish such negligence. In the first place, it is not expressly found that the execution of the instrument in the manner indicated was an act of negligence, and no inference to that effect can be deduced from the facts. The court finds that the words which were erased and altered were written in pencil, but it is not found that Hughes' criminal act of spoliation was thereby in any manner facilitated or rendered easier, or that it could not have been as readily accomplished had the words been written in any other manner; and we cannot say, either as an inference of fact or as one of law, that, for the purposes accomplished by Hughes, pencil writing is more readily effaced than ink or other substance. That would depend in any given case upon circumstances not here found, and which the court could not know—such, for example, as the character of the pencil and paper used, and whether the impression was heavy or light, etc. The mere writing of such an instrument in pencil, either in whole or in part, cannot of itself be said to be negli-

gence, since the law recognizes the validity of such instruments equally with those written with ink, or printed. And, in fact, there is nothing in the findings that necessarily negatives the fact that the instruments in question were written entirely in pencil.

But, if it were conceded that the finding established careless-ness or negligence by defendant, which might in some degree have contributed to the successful execution of the fraud by which plaintiff was deceived into parting with her money, it would not then constitute an estoppel. This is upon the principle that a party is not bound in transactions of this character either to anticipate or take precaution against the commission of a crime by which another may be deceived; that where it is through the instrumentality of a criminal act that the wrong is accomplished, it is the crime and not the negligent act which is the proxi-mate cause of injury; and in such a case the maxim that where one of two innocent persons must suffer from the wrongful act of another, the loss must fall upon the one making the act pos-sible, has no application. While there was some diversity in the earlier cases upon the subject in England, commencing with *Young v. Grote,* 4 Bing. 253, in which the doctrine contended for by respondent was to a certain extent sustained, the trend of the later cases, even in England, is against the rule announced in *Young v. Grote, supra;* and, if the case may not be said to have been expressly overruled, its application has at least been so lim-ited to the peculiar circumstances of that case, and the particular relations there existing between the parties, as to render it no longer valuable as authority in any general sense. The more re-cent cases all support the principles applicable to this class of cases as we have stated them above.

Thus, in the case of *Knoxville Bank v. Clarke,* 51 Iowa, 264, 33 Am. Rep. 129, where the court speaks of the negligence of a drawer of a bill in leaving a blank partly filled so as to admit of a ready raising of the amount payable, these principles are aptly stated: "Can it be fairly said that the negligence of the drawer of the check or maker of the note was the proximate cause of loss to the holder? It seems to us the proximate cause of the loss is the forgery, and this the maker had no reason to anticipate. In some of the cases following *Young v. Grote, supra,* the rule

has been invoked that when one of two innocent persons must suffer by the wrongful act of another, he must suffer who placed it in the power of such third person to do the wrong. It seems to us such rule can have no application to this class of cases. It has never, we think, been carried to the extent of making one person civilly liable for the crime of another, and on principle we think it cannot be." And the following cases support these views: *Scholfield v. Earl of Londesborough*, L. R. App. Cas. (1896) 514; *Burrows v. Klunk*, 70 Md. 451; 14 Am. St. Rep. 371; *Worrall v. Gheen*, 39 Pa. St. 388; *Holmes v. Trumper*, 22 Mich. 427; 7 Am. Rep. 661; *Bruce v. Wescott, supra; Wood v. Steele, supra*.

These considerations make it apparent that the findings did not warrant the judgment entered thereon; and this brings us to the question as to whether the plaintiff, under the facts found, was entitled to recover to any extent. The general rule undoubtedly is, as contended for by appellant, that any material alteration in the contract avoids it, even in the hands of innocent holders, and prevents recovery upon it to any extent. But this rule has application to cases where such alteration has been made by the payee or party seeking to enforce it. By the later authorities the rule does not apply in cases where the alteration is by a stranger to the contract, and it is now the settled doctrine, in this country at least, that such an act by a stranger, without the privity of the grantee or obligee, does not avoid the contract in its entirety, even though it be without the knowledge or consent of the party to be bound, but amounts to a spoliation merely, which will not prevent a recovery upon the contract in accordance with its original terms, where those terms can be ascertained. And this is obviously upon the principle that the act of a mere interloper without the privity of the parties should not be permitted to defeat a contract to the extent that it would otherwise be valid and binding. (See Am. & Eng. Ency. of Law, 2d ed., 214, where the authorities are fully collated.) And an agent without authority is in this sense held to be a stranger to the transaction. (Am. & Eng. Ency. of Law, 2d ed., 217, and cases cited in note.)

In this case, the terms of the contract, as it existed prior to its alteration, have been explicitly ascertained by the court; and, as it also appears that defendant has had the benefit of the contract

actually made by her, the case is squarely within the rule which entitles the plaintiff to recover to that extent. As the facts found are sufficient to sustain a judgment such as plaintiff is entitled to recover under this rule, no new trial is necessary.

For these reasons the order denying a new trial is affirmed; the judgment is reversed, with directions to the court below to enter judgment on the findings in favor of plaintiff for the foreclosure of the mortgage for the amount of principal and interest stipulated in the note as it was executed by defendant, less the amount of interest already paid; defendant to have her costs of appeal.

Harrison, J., and Garoutte, J., concurred.