REESE v. BELL et al.

S. F. No. 2321; December 18, 1902.

71 Pac. 87.

**Bills and Notes—Alteration by Inserting Interest.—In an Action** on a note a defense was that the note had been altered by the insertion therein of writing calling for interest. The plaintiff in a verified complaint had alleged indorsement and transfer of the note by the payee to another for value before maturity, and a like indorsement by him to plaintiff. He testified that he had not received payment. Held, that such testimony tended to establish a prima facie case for plaintiff. On cross-examination of such witness defendant had a right to show by him facts which would dispute his testimony that the payee assigned the note to him before maturity to show why he had not received payment, and to dispute that the note had not been in his possession as testified by him.[1]

---

[1] Cited in Luin v. Chicago Grill Co., 138 Iowa, 270, 115 N. W. 1025, as authority for holding, in an action for compensation for services, that the plaintiff might be cross-examined so as to bring out facts of

Bills and Notes—Evidence.—Where, in a Suit on a Note, a Witness Testified that he had been attorney for the maker after the note was given and at the time certain indorsements were made by the payee, but that he was not the attorney for the payee, his testimony was not rendered incompetent because the payee subsequently testified that such witness was his attorney, the evidence being conflicting, and the court accepting that of the attorney.

Bills and Notes—Doctrine of Relation.—Where the Payee of a Note made a mere equitable assignment thereof, and after maturity indorsed the same, the doctrine of relation would not apply to cut off the right of the makers to set up any defense good against the payee.

Bills and Notes—Indorsement After Maturity.—Civil Code, section 3123, provides that an indorsee in due course is one who in the ordinary course of business and for value before its apparent maturity, and without knowledge of the dishonor, acquires a negotiable instrument duly indorsed to him or indorsed generally. Held, that, where a note was not duly indorsed to plaintiff before its apparent maturity, in an action thereon by him the maker might set up any equitable defense.[2]

APPEAL from Superior Court, City and County of San Francisco; Frank H. Dunne, Judge.

Action by E. L. Reese against Teresa Bell and another. From a judgment for defendants, plaintiff appeals. Affirmed.

Black & Leaming for appellant; T. Z. Blakeman for respondents.

CHIPMAN, C.—The action is on a promissory note executed by defendants, payable to the order of one George R. Eaton, bearing date November 1, 1895, due one year from date, for $5,000, and purporting to bear interest from date until paid at the rate of three per cent per month. It is alleged in the complaint that on August 6, 1896, Eaton, the payee, indorsed, sold and assigned said note to R. C. Hopkins for value, and that thereafter said Hopkins, "and prior

contrary significance to statements of his made on direct examination, even though the facts themselves were not touched upon in the direct examination.

[2] Cited in Bank of Houston v. Day, 145 Mo. App. 425, 122 S. W. 760, where the court says that the element of good faith with respect to the holding of commercial paper is essential to holding in due course.

to the commencement of the action (date not stated), indorsed, sold, assigned and transferred to this plaintiff, for value, said promissory note,'' and that plaintiff is now the owner and holder thereof, alleges nonpayment, and demands judgment for the amount of the note and interest. The answer denies the execution of the note as set out in the complaint; denies the alleged indorsements and assignments and denies ownership in plaintiff; denies that no part of the principal or interest has been paid. For further answer alleges the execution of a note reading in all respects as the note sued upon, except that when said note was delivered to Eaton the clause relating to interest did not contain the words ''from date'' after the word ''coin,'' and did not contain the word ''three'' just preceding the words ''per cent,'' but was blank as to any date from which interest was payable and as to any rate of interest. It is also averred that the consideration for the note was that for one year from its date the said Eaton would ''devote the whole of his time and service for said Teresa Bell 'in looking up the affairs of the Thomas Bell estate,' '' and the answer sets forth the agreement of the same date, signed by Teresa Bell, one of the makers of said note, and by Eaton, and is witnessed by defendant M. E. Pleasant, and is an agreement to pay the note of even date for $5,000, for Eaton's said services. It is averred that, when delivered, said note mentioned in the agreement and in the complaint did not bear any interest, but since the delivery thereof it has been by some person or persons altered, without defendants' knowledge or consent, by inserting the omitted words as above stated; that said Eaton failed to keep his said agreement except for a portion of the time of the months of November and December, 1895; that thereafter Eaton and defendant Teresa Bell mutually agreed that Eaton would receive $1,500 in full payment for all his services performed under said agreement, and should surrender said note; and in accordance with said agreement of settlement said Teresa, on December 31, 1896, executed and delivered to Eaton an order on the executors of the last will of Thomas Bell, deceased, for said sum, and that Eaton accepted the same in full payment of said note, and he ''then and there promised to said Teresa Bell to return said promissory note to her, but he has ever since failed to do so.'' The court found (1) the

execution of the note as alleged and under the agreement set forth in the answer; (2) that Eaton did not indorse or assign the note as is alleged in the complaint, nor did Hopkins indorse it to plaintiff, and plaintiff did not become the holder of the note until after its maturity; (3) that the blanks as to date and rate of interest were filled in after the note was delivered, as alleged in the answer; (4) that Eaton did not keep his agreement set forth in the answer, and, as there alleged, that on December 31, 1896, defendant Bell paid him in full for any services rendered by him. Judgment accordingly passed for defendants, from which and from the order denying his motion for a new trial plaintiff appeals.

Appellant concedes that the testimony is in conflict as to the partial failure of the consideration, settlement of the note as alleged in the answer, and the alteration as alleged. It is contended, however, that there is no evidence whatever to support finding 2. This finding is that Eaton did not, on August 6, 1895, or at any time prior to the maturity of the note, assign it to Hopkins for value at all, nor did Hopkins assign it to plaintiff before the commencement of the action for value at all, nor did Eaton indorse the note to anyone prior to its maturity, and plaintiff did not become the holder until after maturity. This finding in some respects depends upon testimony which appellant claims was improperly admitted in evidence, and this point will first be disposed of.

Plaintiff testified in his own behalf. He was shown the note, and testified that he brought the suit at the request of Mr. Schooler (plaintiff's attorney); that he had not received any payment on the note, and so far as he knew it had not been paid; that the note had not been in his possession; that it was assigned to him by Mr. Eaton; and added, "I think it was before the maturity of the note." On cross-examination he testified that the note was assigned to him for collection by Eaton in Mr. Schooler's office in San Francisco. "The note was not delivered to me. I did not see it at that time. Mr. Eaton assigned it to me for collection just for the use of my name to sue on. I don't know how long that was before the beginning of the suit. It was possibly a few days or a week." (The complaint was filed July 24, 1897, nearly nine months after the note had matured.) He was asked to "state what was said by Mr. Eaton, Mr.

Schooler, or yourself on that occasion at Mr. Schooler's office, when you say the note was assigned to you for collection.'' Plaintiff objected to the question as not proper cross-examination. The objection was overruled and plaintiff excepted. The answer was that ''they merely asked to have the note assigned to me to sue for collection, and Mr. Eaton retained the note; that is as much as I can remember. It was to use my name for suing on the note a third party.'' This was followed by the question: ''The first time that you saw this note . . . . was there any rate of interest on it? Mr. Schooler: I object to the question; it is not proper cross-examination. Nothing asked at all but as to whether that was the note, and the witness said it was. Now, the answer of the defendants in this case is in their first count,—that this note has been altered by inserting the word 'three' and inserting the word 'from date.' The Court: It seems to me he should be allowed to answer whether he saw it or not; answer the question. Mr. Schooler: We take an exception.'' The witness answered that he saw the note in November, 1895, in Eaton's possession, ''and there was no rate of interest in it. . . . . The next time I saw the note was, I believe, some time in December, 1895. It bore interest at that time. The note was then in Mr. Eaton's possession, in San Francisco. Mr. Eaton wanted to borrow $500 from me on the note. . . . . I told him I did not like to loan him $500 on the note. I said at that time I noticed there was three per cent a month interest on the note, and said, 'Is that lawful?' and said, 'Did they agree to sign that three per cent interest?' He said, 'No, I put that on myself'; and I said, 'I did not think that that was lawful'; and he said, 'I could put on ten per cent and it would be lawful.' '' The examination then proceeded without objection, and witness was asked: ''When did you next see that note? A. I had that note in my possession then for about eight months, having loaned him $500 on it, from December, 1895. Mr. Eaton then took the note up and paid me the $500 and interest. I cannot give the exact date when he took the note up. I never saw the note after that until I saw it just here. I do not remember any transaction concerning the note after Mr. Eaton took it up until it was assigned to me for collection.'' He was then asked if he paid any money for the transfer of the note to him, which was objected to as immaterial, in-

competent and not cross-examination, and the objection overruled and exception. He answered: "Yes, sir; money passed, and passed right back to me again. They asked to have this note assigned to me, and wanted it in the hands of a third party, and wanted a money consideration to pass, which there was." He was asked to state where and how the money was passed. "Mr. Schooler: I object as immaterial, irrelevant, and incompetent." Objection overruled and exception. "A. The amount was twenty-three hundred dollars, if I remember rightly, and it was cashed in the Nevada Bank, and it was handed to Mr. Hopkins, and Mr. Hopkins handed it back to me after we got outside the bank." Witness was then asked what was said and done at that time by Eaton, Hopkins and witness. Objected to as not cross-examination, and objection overruled. "A. Well, we just went to the bank. It was at the request of Mr. Schooler and Mr. Eaton that this note should be assigned to me. . . . . I think this money consideration was the same day Mr. Eaton assigned the note to me for collection. We went to the bank, and I gave a check to Mr. Hopkins for $2,300, and the money was carried out, and it was handed back to me by Mr. Hopkins. Mr. Eaton was there. Mr. Eaton knew that Mr. Hopkins handed it back to me. I do not know that the note was produced on that occasion; I did not see it. . . . . I have no interest in the note other than that heretofore stated."

Witness was the plaintiff in the case. In a verified complaint he had alleged the indorsement and transfer of the note by the payee, Eaton, to Hopkins before maturity, for value, and the indorsement to him for value before the commencement of the action. He testified in chief that the note was assigned to him by Eaton before its maturity; that he had not received payment, and so far as he knew it had not been paid; that the note had not been in his possession. This testimony tended to establish a prima facie case for plaintiff, and went to the material issues presented by the complaint. We think it was proper for defendants, on cross-examination, to go to the bottom of this witness' connection with the note, and draw from him all he knew about it, even though the facts within his knowledge might tend to prove the allegations set up in defense. Defendants had the right to show facts by this witness which would dispute his

testimony that Eaton assigned the note to him before maturity; to show why he had not received payment, and why the note had not been paid; and to dispute that the note for which he was asking judgment had not been in his possession; and to show that it had been in his possession, and the facts relating to that possession. By his testimony plaintiff challenged the fullest inquiry, by cross-examination, into his connection with the note.

Fisher Ames testified that he had been attorney for Mrs. Bell, and was her attorney at the time the matters occurred concerning which he testified, but that he was not Eaton's attorney. His testimony was not objected to at the trial, but because Eaton testified that Ames was his attorney it is now urged that the evidence was incompetent. This contention cannot be maintained, if for no other reason than that the evidence is in conflict as to the fact of the alleged relation of attorney and client, and the lower court accepted the testimony of Mr. Ames. He testified to some important facts bearing upon finding 2. He testified that he was not Mr. Eaton's attorney; that he saw the note in question about the middle of November, 1895; "at that time it bore no interest. . . . . I next saw the note in July, 1897, and at that time it bore three per cent interest per month. . . . . It was not indorsed. ' Q. Not indorsed by either of the names that are upon it now? A. Neither of the names were upon it at that time." On cross-examination he testified that Eaton showed him the note in witness' office about the middle of July, 1897, at which time he testified it bore no indorsement. This was long after the maturity of the note, shortly before the suit was brought, and it was then in Eaton's possession. It is not necessary to pursue the evidence at length. The remaining findings are not now attacked, and there is enough, in the testimony of plaintiff and Ames, without resort to the testimony of defendants (which is quite explicit in support of the findings), to justify finding 2. Section 3123 of the Civil Code provides: "An indorsee in due course is one who, in the ordinary course of business, and for value, before its apparent maturity or presumptive dishonor, and without knowledge of its actual dishonor, acquires a negotiable instrument duly indorsed to him, or indorsed generally, or payable to bearer." The evidence in the case was sufficient to support the finding that the note was not in-

dorsed to Hopkins for value before maturity, or, indeed, to anyone prior to maturity, although plaintiff held it for a while as security for the loan before maturity. Conceding that it was not necessary to show that plaintiff took the note before maturity, if his assignor, Hopkins, took it by indorsement before maturity, without notice of any infirmity in it (Eames v. Crosier, 101 Cal. 260, 35 Pac. 873), it appears that Hopkins did not so take the note. According to plaintiff's testimony Eaton assigned the note to plaintiff just before the suit was brought, and when Mr. Ames saw the note, a few days earlier, it bore no indorsement.

There is evidence to support the finding that the consideration for the note was services to be performed by Eaton, the payee, and also that he failed to perform all the services agreed to be performed by him. There is sufficient evidence also to support the finding that the note was altered in the particulars claimed in the answer, without the knowledge or consent of the makers, at some time after it was delivered to Eaton, and that this alteration was made before the alleged transfer to Hopkins. There is also evidence sufficient to support the finding that on December 31, 1896, Eaton received $1,500 in payment of his said services, which constituted the consideration for the note. On these points the evidence was either in conflict or sustained the findings without conflict, and, as we understand appellant, he concedes that under the rule the facts cannot be inquired into here. It is claimed, however, that the note was transferred to Hopkins before maturity for value and without notice of any infirmity. The claim that there was at most but a partial failure of consideration by reason of Eaton's not performing service for the full term agreed upon is found adversely to appellant on sufficient evidence which tended to show that Eaton and Mrs. Bell had an agreement by which he was to surrender the note in consideration of the payment of $1,500 to him by Mrs. Bell. But it is said that this agreement was entered into after the transfer of the note to Hopkins. There is evidence that the note was not indorsed by the payee or the indorsee until just before the complaint was filed, and that it did not pass from Eaton to anyone by indorsement before maturity. Conceding that he transferred the note to Hopkins in August, 1896, it was at most but an equitable assignment, and did not shut out the

defense set up by defendants unless the indorsement in July, 1897, related back to the date of the transfer, as claimed by appellant, and operated as an indorsement at that date. But we do not think that the doctrine of relation can apply to cut off the right of the makers of the note to set up their defense. The doctrine of relation is but a fiction of the law adopted by the courts solely for the purposes of justice: Shay v. McNamara, 54 Cal. 169; Hawkins v. Harlan, 68 Cal. 236, 9 Pac. 108.

When the note was executed it bore no interest, and the contemporaneous agreement shows that it was not intended to bear interest, at least until the year's services were performed, which constituted its consideration (Civ. Code, sec. 1917); and respondent urges that by section 1700 of the same code the intentional alteration of the note was in a material particular, and extinguished "all the executory obligations of the contract" in favor of the payee against the makers who did not consent to the alteration. We are cited to Walsh v. Hunt, 120 Cal. 46, 39 L. R. A. 697, 52 Pac. 115, where it was said that "any unauthorized change in a material respect destroys the integrity of the instrument as the contract which the maker has executed; it ceases to be his contract, and is avoided, even in the hands of an innocent holder for value"; and the principle applies as well to commercial paper—citing cases. If the alteration was material this fiction of the law, now invoked, could not be used to override the salutary rule enunciated in Walsh v. Hunt, supra. But if it be true, as is claimed by appellant, that the alteration was not material, and would not affect the validity of the note in the hands of an innocent holder (citing Fisher v. Dennis, 6 Cal. 577, 65 Am. Dec. 534; Visher v. Webster, 8 Cal. 112; and First Nat. Bank v. Wolff, 79 Cal. 69, 21 Pac. 551, 748), the fact remains that the note was not "duly indorsed" to Hopkins or plaintiff "before its apparent maturity," and neither Hopkins nor plaintiff was "an indorsee in due course" (Civ. Code, sec. 3123), and defendants could plead their equitable defense.

The judgment and order should be affirmed.

We concur: Gray, C.; Haynes, C.

PER CURIAM.—For the reasons given in the foregoing opinion the order appealed from is affirmed.