[Civ. No. 3057. Third Appellate District.—July 10, 1926.]

## BANK OF ITALY (a Corporation), Appellant, v. SIERRA VALLEY BANK (a Corporation), Respondent.

[1] BANKS AND BANKING—FORWARDING OF NOTE AND COLLATERAL FOR COLLECTION — PAYMENT—NEGLIGENCE—CONVERSION—ESTOPPEL.—It is not negligence for a bank to send for collection a note and collateral to another bank, of which the maker of the note is the president, where there was no other bank in the place where the collection was sent; nor is the forwarding bank precluded by section 3543 of the Civil Code (which provides that where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer) from recovering damages for the conversion of said collateral from the collecting bank, which permitted the collateral to get into its president's (the maker's) possession without obtaining payment of the note.

(1) 7 C. J., p. 616, n. 67; 21 C. J., p. 1170, n. 67, p. 1172, n. 70, 72.

APPEAL from a judgment of the Superior Court of Sierra County. W. I. Redding, Judge. Reversed.

The facts are stated in the opinion of the court.

C. E. McLaughlin, Louis Ferrari, Richard Fitzpatrick and J. J. Posner for Appellant.

———

1. Bank collections, note, 30 A. L. R. 647.
   78 Cal. App.—43

U. S. Webb and Henry B. Neville for Respondent.

BARTLETT, P. J., *pro tem.*—By its complaint in this action appellant, a banking corporation organized under the laws of the state of California, seeks judgment against respondent, also a banking corporation organized under the laws of the state of California, for the sum of $60,000, in which amount appellant claims it has been damaged through an alleged conversion of certain personal property by respondent belonging to appellant. At the time of the transactions out of which the action arises the principal place of business of appellant was at the city and county of San Francisco, California, and that of respondent was at Loyalton, Sierra County, California, and between the two places there was a daily communication by United States mail.

The evidence introduced at the trial of the action, and which consists largely of undisputed letters and telegrams passing between the parties, shows that on August 16, 1921, two individuals named Mont Berg and W. H. Duncan appeared at the head office of appellant in San Francisco and that Berg made application for a loan of $25,000 to be-secured by 250 shares of the capital stock of a bank known as the Indian Valley Bank of Greenville and 176 shares of the capital stock of the respondent Sierra Valley Bank of Loyalton. Said Mont Berg signed a note for $25,000 in favor of appellant and left the note with appellant with an authorization to appellant to pay a draft drawn on said Berg signed by said W. H. Duncan, in care of the Bank of Italy, and accompanied by 176 shares of the capital stock of the respondent. The note was not dated, but one of the vice-presidents of the appellant, one A. J. Gock, with whom this transaction was had, was authorized to insert the date in the note when the draft was presented. With the note and authorization Berg also left with appellant a collateral agreement pledging collateral and 250 shares of purported capital stock of the Indian Valley Bank. Nothing further occurred until August 23, 1921, when W. H. Duncan appeared at the Bank of Italy in San Francisco with a messenger from the Crocker National Bank of San Francisco and presented a draft for $25,000, accompanied by 176 shares of the capital stock of the respondent bank. Appellant paid the

draft by a cashier's check and delivered the same to the messenger from the Crocker National Bank, which cashier's check was subsequently paid through the clearing-house. The draft was mailed by appellant to Mont Berg, the 176 shares of capital stock of respondent were placed with the other collateral, the note was dated and put in force, and the loan transferred to the note department of appellant, and carried as a loan evidenced by the promissory note of said Mont Berg secured by the said capital stock of respondent and the Indian Valley Bank.

On August 25, 1921, appellant received at its place of business in the city of San Francisco the following telegram from Mont Berg:

"Loyalton, Cal. Aug. 25, '21.  8.40 A. M.      4839
"Bank of Italy, San Francisco, Cal.
                    "Attention Mr. Fickett.
"I have made arrangements for the payment of my note. Please forward same together with collateral to Sierra Valley Bank Loyalton for collection.
                         "MONT BERG.      9:07 A. M."

This telegram was received by appellant at 9:07 A. M., August 25, 1921, and upon its receipt the note of Mont Berg to appellant for $25,000 and the shares of capital stock of the Indian Valley Bank and of the respondent deposited as collateral with said note were transferred from the note department of appellant to its collection department, and sent to the Sierra Valley Bank at Loyalton, California, by registered and insured United States mail, for collection. The written instructions as to collection contained a direction to "deliver documents only on payment," and special instructions "collect interest at the rate of 6% from 8–23–21 to date of payment," "collect $2.50 for postage charges," and gave as list of property: "Note, 250 shares of Indian Valley Bank #103–117, 176 shares of Sierra Valley Bank, attd. #124–126–137–136–106–133–132– 139–103–121."

The note and collateral reached the postoffice at Loyalton, California, on August 27, 1921, and the package containing the same was on the same day delivered at said postoffice to one G. C. Brooks, who was then the assistant cashier of the respondent, and who signed the registry card

for the package, the signature thereon being as follows: "Sierra Valley Bank, G. C. Brooks, Asst. Cashier." After its signature by said assistant cashier of respondent this card was forwarded to appellant at San Francisco, California, and received by it.

Respondent's assistant cashier, Brooks, after receiving the registered and insured package containing the note and collateral stock, proceeded with the same to the place of business of the respondent and laid the package with other mail upon his desk, which Mr. Brooks testifies passed on August 27, 1921, into the possession of Mr. S. H. Sherwood, the cashier of respondent and Mr. Mont Berg. Several days passed without appellant receiving any further information concerning the collection, and it thereupon sent what is denominated a tracer, a card written in red ink, directed to Mont Berg asking payment of the $25,000. This card came into the hands of S. H. Sherwood, the cashier of the respondent who states that on taking the same to Berg that he was informed by him that it was a proposition he (Berg) was handling, and that Berg dictated the following letter, which he, Sherwood, signed as cashier and mailed to appellant on September 7, 1921:

"Loyalton, California, September 7, 1921.
"Bank of Italy,
      "San Francisco, Calif.
                  "Attention of Mr. Gock:
"Gentlemen:

"We are in receipt of your collection #666217, note and collateral of Mr. Mont Berg. We got in touch with Mr. Berg today, and he informs us that he will be in a position to pay this up within a very few days, as he is expecting to consummate the sale of some live stock. We shall forward draft immediately upon receipt of payment.

                  "Yours very truly,
                        "S. H. SHERWOOD, Cashier."

This communication was received by the appellant on September 8, 1921, at its main office in San Francisco. On September 10, 1921, Mr. Sherwood, the cashier of respondent, wrote and mailed appellant the following letter, relating to the collection, which letter was received by appellant at

its San Francisco place of business, this letter, like the one of September 7, 1921, being written upon the letter-headed paper of the Sierra Valley Bank:

"Loyalton, California, September 10, 1921.
"Bank of Italy,
 "San Francisco, Calif.
                "Attention Mr. Gock.
"Gentlemen:

"Referring to your collection #C 666217, note and collateral of Mr. Mont Berg, we are sorry to report that Mr. Berg was compelled to go into the St. Mary's hospital at Reno, Nevada, for an operation last Friday morning. This will delay the payment of this collection for a few days, as the sale of Mr. Berg's livestock will go on just the same, and with your permission, we shall hold this note and collateral until we hear further from Mr. Berg.
                "Yours very truly,
                    "S. H. SHERWOOD, Cashier."

No further information regarding the collection being received by appellant on October 5, 1921, it wired respondent to ascertain the fate of the collection and received a reply from respondent to the effect that the note and collateral sent by appellant for collection had been stolen with other notes and bonds by bandits. In response to this notification appellant wrote respondent to have the stolen certificates canceled and new ones issued. On November 3, 1921, appellant again wired respondent concerning its collection and was wired by respondent in effect that remittance in full would be made the next day. On November 30, 1921, demand was made by appellant for the payment of the collection and was refused by the respondent.

Neither the note, nor the stock hypothecated as security for the same, nor the money represented thereby has ever been returned to appellant, the evidence showing that the capital stock of respondent that was pledged was surrendered on August 28, 1921, by Berg to the secretary of respondent, who issued to Berg new certificates in lieu of the ones deposited with appellant as security. These new certificates the evidence shows Berg used as pledges with other banks

on loans made to him. The new certificates, at the request of Berg, were dated back to August 23, 1921.

At 3 o'clock P. M. of August 23, 1921, a purported special meeting of respondent's board of directors was held at Loyalton. The by-laws of respondent did not provide a mode of procedure for calling special meetings of its directors, and no written notice was given any of the directors of this meeting, but verbal notice was given to all but two of them. At this meeting the directors who were present proceeded to elect Mont Berg president of the Sierra Valley Bank to fill the vacancy occasioned by the resignation of one Raffaele Dotta, former president of the bank.

After this election on August 23, 1921, and after 3 o'clock P. M. of that day, the following letter written on stationery of the respondent bank, by S. H. Sherwood, its cashier, was sent to the appellant at its main office in San Francisco, California:

"Loyalton, California, Aug. 23, 1921.

"Bank of Italy,
    "San Francisco, Calif.
            "Attention Mr. Fickett:

"Gentlemen:

"At a meeting of the board of directors of this bank held this day, Mr. Mont Berg was elected president succeeding Mr. Raffaele Dotta; Mr. Dotta, together with Mr. A. P. Laffranchini, remain as vice-president.

"Authorization was also made for the depositing of our San Francisco reserve account with your institution. This will be done immediately upon receipt of the necessary permission from the State Banking Department, which has been already requested. Kindly forward signature cards.

"Assuring you that we will look forward to our future relations with a great deal of pleasure, we are,

"Very truly yours,
            "S. H. SHERWOOD, Cashier."

The foregoing communication was received by the appellant and the following answer sent by appellant to respondent written and mailed at San Francisco, California, on the 25th day of August, 1921:

"San Francisco, California, August 25, 1921.
"Mr. S. H. Sherwood,
      "Cashier, Sierra Valley Bank,
            "Loyalton, California.
"Dear Mr. Sherwood:

"We have your letter of the 23rd of August, addressed to Mr. Fickett, and note that Mr. Mont Berg was elected President of your institution at a meeting of the Board of Directors. We also note that you have applied for permission to designate our institution as a depository for you in San Francisco. As required, we herewith enclose signature cards and would ask that you have two of the cards signed by the officers who will be authorized to draw against your account with us.

                "Very truly yours,
                  "_____,
                        "Vice President."

The evidence shows that a letter mailed on a given date in Loyalton would reach San Francisco in one day after leaving Loyalton, and that all mail deposited at Loyalton after 3 o'clock P. M. of any day would stay over until the next day at 3 o'clock P. M., at which time it would leave Loyalton.

[1] By its answer respondent sets forth a special defense of nonliability to appellant because of alleged negligent acts on the part of appellant through which Mont Berg as an individual became possessed of the note and stock in controversy, and that by his individual fraudulent acts therewith, and not because of any act on the part of respondent, the injuries complained of resulted to appellant. This special defense was upheld by the trial court and judgment was given that appellant take nothing as against the respondent by the action. From said judgment this appeal has been taken by respondent.

When appellant, in response to the telegram which it received from Mont Berg on August 25, 1921, mailed to respondent for collection the note and collateral which appellant then held, was such sending such negligent act on its part as to preclude a recovery against respondent in this action because of respondent's failure to carry out the in-

structions accompanying said collection, is the question presented for solution.

This telegram is a most important instrument in the transactions involved in this action. There is nothing in the telegram itself which would warrant a suspicion that any fraudulent act was being contemplated on the part of Mont Berg concerning his note and the collateral accompanying the same at the time the telegram was sent to the Bank of Italy. While the note in question was not due at the time of the sending of the telegram, that fact would not have justified appellant in declining to send the collection as the telegram said nothing as to the amounts of money Berg would pay to satisfy the collection on presentation. The telegram was sent from Loyalton, the place of business of respondent. It was the only bank doing business at that place. The shipment was carefully made. It was registered and insured. It was addressed to the Sierra Valley Bank, and no one had a right to receive the package from the United States postoffice at Loyalton save the Sierra Valley Bank or its authorized representative. A return receipt for the package was requested by the sender. The package was delivered to an officer of the respondent at the postoffice in Loyalton. It was receipted for at said postoffice by the Sierra Valley Bank through its assistant cashier. This receipt was transmitted to appellant, and it had no reason to believe the note and collateral were not in the possession of the respondent until it received from respondent on October 5, 1921, the telegram in which it was stated "Mont Berg note and collateral taken by bandits together with all other papers." If this statement was true it would indicate that respondent had the note and collateral in its possession up to the date of that telegram. The evidence shows that respondent did not deny its liability for this collection until November 30, 1921, and none of its communications, either letters or telegrams, prior to that date to appellant indicate a dispute of its liabiliy to appellant for the collection.

Respondent urges that because of the provisions of section 3543 of the Civil Code: "Where one or two innocent persons must suffer by the act of a third, he by whose negligence it happened, must be the sufferer," the appellant is not en-

titled to any relief in this action. The act claimed as the negligence on appellant's part barring relief is appellant not preventing the delivery of the package containing the note and collateral after appellant was notified that Mont Berg had been elected president of respondent. A number of authorities are cited in respondent's brief wherein it has been held in some jurisdictions that the sending of a collection by a bank to the bank which is to pay the collection is a negligent act. The authorities are not uniform, however, in this regard and there are decisions holding that such action is not negligence of itself and that it is not negligence where there are no other banks in the place where the collection is to be made. In the case at bar the only bank at Loyalton was the Sierra Valley Bank to which the collection was sent.

Section 3543 of the Civil Code has received but few constructions in the appellate courts of this state. The case of *Walsh* v. *Hunt,* 120 Cal. 46 [39 L. R. A. 697, 52 Pac. 115], is an apparently clear one determining when the section should be applied. There a mortgagor had signed a mortgage for $500 which the agent raised to $1,200 and then transferred to an innocent third party for the $1,200. The amounts in the mortgage were written in pencil and the claim was made that the mortgagor in signing a mortgage in pencil the amount of which could be raised was so negligent that the terms of section 3543 of the Civil Code should be applied. But the supreme court of this state in reversing the judgment of the lower court held that this section did not apply where the result would come from the wrongful act of the third party, even if it was made possible by reason of some act of one of the innocent parties. Applying this ruling to the facts in the case at bar, respondent is precluded from receiving the benefit of the section invoked, for the acts of Mont Berg with the note and collateral cannot be considered as other than a wrongful act toward both appellant and respondent. Besides, the section can be applied only where there are two innocent parties. The facts in this case will not justify considering respondent an innocent party such as section 3543 of the Civil Code applies to. In due course of business respondent received by registered mail from appellant a package addressed not to Mont Berg or any other

individual officer of respondent, but to the Sierra Valley Bank, the package showing on its address that it was from appellant and the amount of stamps thereon showing that it contained inclosures of a large value. It came into the possession of the assistant cashier of the bank, an officer authorized to receive it, and from that moment it must be deemed in the possession of the Sierra Valley Bank. Respondent nowhere questions that at this time the assistant cashier who received the package, and the cashier Sherwood, and the president Mont Berg were qualified officers of the respondent. Whatever was thereafter done with the package by any of these three parties cannot be held to be other than an act of the Sierra Valley Bank. If Mont Berg took possession of the properties, as it clearly appears he did, his possession was without right and respondent was responsible for the loss of the properties to appellant.

It cannot well be said that respondent should be regarded in any sense as an innocent party in the transactions herein involved. Its actions toward appellant from the time appellant sent its tracer concerning the collection are not such acts as would have been performed by an innocent party. Both its assistant cashier and cashier knew that a valuable package sent it by the Bank of Italy had disappeared, and that it was not among the papers of the bank; the cashier demanded its return from Mont Berg, he requested its payment, and still knowing it was not paid and knowing that Berg had received it and had transferred to himself some of the collateral sent in the collection, wrote in the name of the bank that the collection would be paid and at no time informed appellant that respondent did not have the note and collateral in its hands.

Banks, like all other business institutions, are liable for the acts of their officers. Those who deal with them in due course of business are entitled to protection and they have a right to presume that their officers are men of integrity and trust. Should it be held otherwise the worth of credit on which so much of the modern business transactions is conducted would be most seriously impaired.

As this action turns upon the question of whether or not section 3543 of the Civil Code applies and it seems clear to this court on the evidence in the action that the sec-

tion does not apply, it is not necessary to discuss the other propositions argued in the briefs.

The judgment appealed from should be reversed, and it is so ordered.

Hart, J., and Plummer, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 7, 1926.