[Civ. No. 15193.   Second Dist., Div. One.   Aug. 5, 1946.]

ROBERT T. NATHE, Respondent, v. FRED W. GRAY CO.,
Appellant.

Macfarlane, Schaefer & Haun and Henry Schaefer, Jr.,
for Appellant.

Joslyn & Hollopeter for Respondent.

YORK, P. J.—This is an action to quiet title to an automobile and for the cancellation of a promissory note, chattel mortgage and certificate of ownership in favor of, and given to secure a loan made by the defendant upon plaintiff's automobile.   During the plaintiff's absence from the state, his roommate and friend, Jack Charlesbois, took plaintiff's automobile without his permission to defendant's place of business for the purpose of negotiating a loan.   The automobile was registered in Minnesota and bore license plates issued in that state.   Charlesbois representing himself to be the plaintiff,

and without authority to do so, procured from defendant a loan of $100 by presenting a bill of sale to the said automobile issued in Minnesota, and by executing the note, chattel mortgage and other papers necessary to register the automobile under California law.

The trial court rendered judgment in favor of plaintiff and ordered the said note, chattel mortgage and certificate of ownership to be cancelled.

Defendant prosecutes this appeal from such judgment urging that it "is contrary to the law and evidence for the following reason: The plaintiff, by his negligence, made it possible for Jack Charlesbois to procure the loan and is now estopped from asserting forgery."

The only testimony presented at the trial herein was that of respondent Nathe and appellant Fred W. Gray, from which it appears that respondent had known Jack Charlesbois for 6 or 7 years, having met him in high school in Minneapolis, where they visited in each other's home; that they came to California together in respondent's Buick convertible car about a month after respondent purchased the same; that they roomed together at the Y.M.C.A. in Pasadena, and attended a dramatic school. Respondent testified that he was 22 years of age and believed that Charlesbois was under 21 years; that Charlesbois had driven the witness' car in Minneapolis and they took turns driving out to Pasadena; that after they reached the latter place respondent did the driving; that before leaving home respondent loaned Charlesbois $100, but took nothing back from him to evidence such loan; that Charlesbois worked at the Empire Cafe in Minneapolis and was a member of the Bartenders' Union. The two boys arrived in California early in September of 1944; that respondent had in his possession the bill of sale for the car issued to him in Minnesota and the car bore license plates from that state; that two days after their arrival in Pasadena, respondent was recalled to Minneapolis by the death of his father, and he remained away from California from September 8 to October 6 or 7, 1944. When leaving Pasadena, respondent's car was parked in front of the Y.M.C.A., and he gave his keys to Charlesbois and authorized him to move the car "around the corner to the filling station parking lot," if there were any complaints from the police department. Respondent also left in his room at the Y.M.C.A. his personal effects and papers, including the bill of sale to the car.

There is no dispute that Jack Charlesbois representing himself as respondent borrowed $100 from appellant. This was accomplished by his appearing in person at appellant's place of business, driving respondent's car and presenting the bill of sale therefor. On September 23, 1944, said Charlesbois signed respondent's name to all of the documents required by appellant to consummate the loan, and as well an application for registration of the car under California law. Appellant Gray admitted that he did not ask Charlesbois for any identification; that it was his usual policy to grant loans without identification "where they have the title"; and that he made no effort to determine his credit or responsibility, but relied entirely on the fact that he had the bill of sale.

When respondent received the California registration certificate on October 23d, he noticed appellant's name shown thereon as the legal owner of his car. Respondent testified that he asked Charlesbois what that meant. "I said according to that the car was not mine and he said yes it was, that there had been a mistake. He said that once while I had been gone he had driven it to L. A. and the lights were bad, and while he was there the mechanic told him that he needed a California license plate and he told Jack (Charlesbois) if he would leave the money and the ownership card he would get the license plate for him, and he (Charlesbois) said immediately that he would call the Fred W. Gray Company and get it straightened out." Instead, Charlesbois disappeared two days after this conversation. About December 19, 1944, respondent telephoned to appellant for an explanation of a notice received by him to the effect that he owed said company $130, and on December 29, 1944, he filed the instant suit.

Among other things the court found "that the said Jack Charlesbois took the car belonging to plaintiff to the office of the defendant company without any actual or constructive authority from the plaintiff and did on or about the 22d day of September, 1944, make application for a change in registration from Minnesota to California on said car and did at said time and place make application for a chattel mortgage and did forge the signature of the plaintiff to the application for change of registration, the application for a loan, the note and the chattel mortgage and did represent and hold himself out to be the plaintiff, Robert T. Nathe. It is further a true fact that the defendant company, acting upon such forged instruments did make a loan to said Jack Charles-

bois of One Hundred Dollars ($100.00) plus financing costs and cost of insurance;

"(14) It is further a fact that the said finance company through its employees, and more particularly through its owner, Fred W. Gray, talked to the said Jack Charlesbois and at no time asked the said Jack Charlesbois for any references or identification or for his place of business or for anything else which would have shown whether or not he actually was the plaintiff, Robert T. Nathe. It is further a fact that the said Robert T. Nathe at no time until the 19th day of December, 1944, had any knowledge of said transactions and of the existence of the chattel mortgage on his car and that the said Robert T. Nathe never at any time received the money secured by the said Jack Charlesbois or any part of it."

█ It is appellant's contention that section 3543 of the Civil Code is applicable to the situation herein, to wit:

"Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer." It is urged that it would have been an easy matter for respondent to have taken the bill of sale with him, "to have moved the car onto the parking lot and have taken the keys with him," and that under the facts "it is more just and equitable that the plaintiff suffer than the defendant."

In the case of *Davis* v. *Davis,* 26 Cal. 23, 44 [85 Am.Dec. 157], in which an assignment of error was taken because of the refusal of the trial court to give an instruction substantially in the language of section 3543, *supra,* the Supreme Court said: "But great caution should be exercised in applying this principle, and the Court should be satisfied that the case is one calling for its application, before the question is submitted to the jury, as to which of the parties is entirely *in delicto.* . . . In legal contemplation the person who causes a loss to another is not innocent, and it would have been improper for the Court to have charged the jury that, both parties being innocent, one of them could be found guilty of a wrong to the other."

Under the language used in the code section, "it would seem that an element of negligence must be present in order to render the maxim applicable, and the wording of the rule in many cases bears out this assumption." (10 Cal.Jur. § 48, p. 506, citing *Macdonald* v. *Cool,* 134 Cal. 502, 504 [66 P. 727]; *Walsh* v. *Hunt,* 120 Cal. 46, 52 [52 P. 115, 39 L.R.A. 697].) In the last cited case, defendant authorized one

Hughes, a real estate dealer and notary public, to negotiate a loan of $500 on certain premises with which to pay off an existing mortgage. Thereafter Hughes presented for defendant's signature a note and mortgage which she executed before Hughes as notary and left the same with him for delivery to the plaintiff. In both documents the principal sum wherever expressed and the rate of interest were written in pencil by Hughes at the time he prepared them; and after defendant left his office, said Hughes erased the pencil words and figures and wrote in lieu thereof with pen and ink $1,200 and raised the rate of interest from 9 to 10 per cent. Thereafter, having obtained $1,200 from plaintiff, Hughes paid off the prior mortgage of $500 and retained the balance of $700. Both parties to the action were ignorant of the alteration until about a year later, when Hughes absconded and they met for the first time. The lower court gave judgment to plaintiff foreclosing her mortgage for the full amount of the note as expressed therein after the alteration, apparently based upon the theory that defendant was guilty of such negligence in executing the documents partly written in pencil, thus enabling Hughes to perpetrate his fraud, that she was estopped to set up such fraud as a defense.

In reversing the judgment, the Supreme Court stated: "But, if it were conceded that the finding established carelessness or negligence by defendant, which might in some degree have contributed to the successful execution of the fraud by which plaintiff was deceived into parting with her money, it would not then constitute an estoppel. This is upon the principle that a party is not bound in transactions of this character either to anticipate or take precaution against the commission of a crime by which another may be deceived; that where it is through the instrumentality of a criminal act that the wrong is accomplished, it is the crime and not the negligent act which is the proximate cause of injury; and in such a case the maxim that where one of two innocent persons must suffer from the wrongful act of another, the loss must fall upon the one making the act possible, has no application." (See, also, *Miller* v. *Citizens Nat. Trust etc. Bk.*, 1 Cal.App. 2d 470, 477 [36 P.2d 1088].)

Likewise in the case under consideration, respondent gave Charlesbois the limited authority to move his car to a parking lot in the event it became necessary during respondent's absence. He neither authorized nor anticipated that Charles-

bois would purloin the bill of sale from his personal effects, or that Charlesbois would forge respondent's signature in order to negotiate a loan of money for his own use. On the other hand, it cannot be said that appellant exercised ordinary care and prudence. Mr. Gray admitted that he relied entirely upon the bill of sale presented to him by Charlesbois and made no inquiry as to the truth of Charlesbois' statements, although a full week intervened between the date of the application for the loan and the time when Charlesbois received the money, owing to the fact that Charlesbois did not reach the age of 21 years until the latter date.

Under the circumstances, neither section 3543 nor section 3524 of the Civil Code is applicable to the facts presented by the instant litigation.

For the reasons stated, the judgment appealed from is affirmed.

Doran, J., and White, J., concurred.

A petition for a rehearing was denied August 22, 1946.