King *et al.* *vs.* Sparks.

KING *et al.* *vs.* SPARKS.

[Jackson, C. J., did not preside in this case, on account of providential cause.]

1. Where one person authorized another to sign his name to a note for $500, and the latter, instead of so doing, signed a note for $1,100, the principal was not bound thereby. The agency was a special one, and the signing of a draft for a larger amount was not authorized and did not bind the principal. It was, therefore, error to charge that, if K. authorized G. to sign his name to a note for $500, and G. abused his authority and signed K.'s name to a note for a larger amount than K. authorized, and a third party took it without notice, K. would be liable.

2. Money having been advanced on such a draft to and for the benefit of the person who first signed it as drawer, and who also signed the name of another thereto, the person advancing it was chargeable with notice as to the genuineness of the paper.

3. The principle that where one of two innocent persons must suffer by the act of a third person, he who put it in the power of the third person to inflict the injury must bear the loss, does not apply in this case, because the third person who did the injury did so of himself and without warrant or authority from any one.

January 18, 1887.

Principal and Agent. Fraud. Torts. Notice. Promissory Notes. Before Judge LAWSON. Jones Superior Court. April Term, 1886.

Sparks brought an action of complaint against R. A. Gordon, William King, G. W. King and three others on the following draft:

"$1,110.00.                    Macon, Ga., January 16, 1884.

"On December 16th next, after date, please pay to ourselves or bearer eleven hundred and ten dollars at any bank in Macon, Georgia. If this draft is not punctually paid at its maturity, I do hereby agree to pay interest thereon at the rate of eight per centum per annum from the date of this draft, interest having been agreed on at that rate, besides all costs incurred in its collection. I also agree to ship my crop of cotton to W. B. Sparks, at Macon, Georgia, and to pay him commissions and storage at the rate of one dollar and twenty-five cents per bale."

The two Kings pleaded *non est factum.* On the trial, R. A. Gordon, the principal debtor, testified that G. W. King signed the draft; that William King did not, but he (Gordon) signed it for him by his authority; that the witness desired to borrow money and wanted William King's name on the note; that he went to the field where King was at work in the low-ground and asked him to sign a note; that King said he did not have time to go to the house, but authorized the witness to sign his name to a note binding him to the extent of $500. The witness did not have this note with him when he asked for the signature. He signed it subsequently at his store. Under this authority, he signed a note for $500; also a note to one Adams for $900. The witness did not tell any of the payees of these papers that William King was responsible for $500. He did not remember exactly when this occurred, but had the note when it happened. The witness had been arrested on a charge of forgery on account of this draft at the instance of Sparks. He testified that there were several securities on each of the papers, and he did not consider that Wm. King's liability amounted to more than $500.00.

The draft was dated January 16, 1884. Each of the Kings denied signing it, or authorizing the signing thereof. William King testified that he said that he would sign a

note for $500, provided two other named persons also would sign it, but they did not both do so; that he did not authorize Gordon to sign his name to the note; that he knew nothing of it until long after it was signed; that he heard that Gordon had signed his name to other papers, and meeting him, asked him about it, but the latter denied it; and that the time when Gordon came to him in the field was March 14, 1884.

A number of witnesses testified as to a conversation between Gordon and King, in which the latter denied the right of the former to sign his name. Some of them stated that King told Gordon that he was only authorized to sign his (King's) name to a note for $500, and others testified that King also said that this was on condition that certain other persons would sign. A son of William King testified that Gordon tried to get him to sign his father's name to the paper, but on his refusal, Gordon signed it himself; that this occurred in Macon in January, 1884, and Gordon then told him that he had signed all the names to the paper. This was denied by Gordon.

It was shown that Sparks accepted the draft as an accommodation to Gordon, who had dealings with him; that he raised money for Gordon on it, and that when it fell due, he took it up. Certain signatures of G. W. King were put in evidence for comparison.

The jury found against all of the defendants. The two Kings moved for a new trial on substantially the following grounds:

(1)–(3)'(6.) Because the verdict was contrary to law, evidence, the weight of the evidence and the charge of the court.

(4.) Because the court admitted in evidence the note against William J. King,—the objection being that there was no evidence to show authority to sign such a note as this.

(5.) Because the court erred in charging the jury that, if they believed from the evidence that W. J. King author-

ized R. A. Gordon to sign his name to a note for $500, and R. A. Gordon abused his authority and signed said King's name for a larger amount than King authorized, and Sparks had no notice thereof, W. J. King would be liable.

The motion was overruled, and the defendants excepted.

KEY & PRESTON, by J. H. LUMPKIN; R. V. HARDEMAN; LANIER & ANDERSON, for plaintiffs in error.

HARDEMAN & DAVIS, for defendant.

BLANDFORD, Justice.

Sparks brought his action upon a certain bill or draft which purported to be made by the Gordons and the plaintiffs in error. To this action the Kings pleaded *non est factum*. There was much evidence introduced to show whether Gordon had the right to sign the name of the Kings to this note or draft, or to any note for any amount; but the plaintiffs' evidence clearly showed that he only had the authority from one of the Kings to sign his name to a note for five hundred dollars.

The court charged the jury that, if W. J. King authorized R. A. Gordon to sign his name to a note for $500, and Gordon abused his authority, and signed King's name to a note for a larger amount than King authorized, and Sparks had no notice thereof, King would be liable. This charge of the court is the main exception and error assigned.

Gordon was but a special or particular agent to do a particular act, to-wit, to sign King's name to a note for five hundred dollars; nor does it appear that Sparks knew that Gordon was King's agent for any purpose, as King's name was signed to the paper, and did not purport to have been signed by Gordon, agent. The agent had no authority to sign the name of King to this draft; his having done so is a mere forgery. King is not liable on the same to any one; it is not his act and deed, and he did nothing which estops him from so declaring. See Story on Agency, §17; Code, §2196; 39 Mich. 644.

The money advanced by Sparks on this draft was to Gordon and for Gordon's benefit, and Sparks was chargeable with notice as to the genuineness of the paper.

The principle that where one of two innocent persons must suffer by the act of a third person, he must bear the loss who put it in the power of such third person to inflict the injury, does not apply in this case, because the third person who did the injury did so of himself and without warrant or authority from any one; it was not an abuse of a power granted by King to Gordon, but it was an act by Gordon wholly unwarranted. 6 Wall. 80, 83. The charge was manifest error.

Judgment reversed.