## EMILY A. GOODWIN *vs.* DANIEL C. NORTON.

## York.   Opinion April 1, 1899.

*Deed.   Alteration.   Evidence.   Estoppel.   Disseizin.*

George M. Freeman, at one time the owner of the demanded premises, con-
veyed them, in fraud of his own creditors, to his son Gersham. Later, the
father and son joined in a deed of the same to one Asahel Goodwin. Still later,
Asahel Goodwin, in the presence of George M. Freeman, and with his con-
sent, erased his own name as grantee from the deed, and inserted in place
thereof the name of Harriet, his wife. The deed had not then been recorded,
but was recorded after the alteration, in 1870. Gersham the son was not
present when the deed was altered, and it does not appear that he ever knew
of the alteration. Harriet was not then present, nor did she at the time have
knowledge of the transaction. Afterwards, in 1879, the premises were
attached as the property of Asahel, and by levy and deed the demandant
claimed that the title had come to her. Harriet conveyed to the tenant in 1894,
by deed of gift.

*Held ;*  (1) that by the evidence in this case, title by disseizin is not shown in
either party as against the other; (2) that the testimony of George M. Free-
man, one of the grantors, is admissible to show the alteration in the deed;
(3) that the alteration was ineffectual to vest the title in Harriet; (4) that the
demandant claiming under Asahel Goodwin, is not estopped to set up title
against the tenant, claiming under Harriet.

ON REPORT.

This was a real action brought to recover possession of a lot of
land with the buildings thereon, situated in the village of Cape
Neddick, in the town of York. Plea, general issue.

The plaintiff introduced evidence to show that on the 20th day
of October, 1869, Gersham C. Freeman and George M. Freeman
by warranty deed conveyed the premises in dispute to Asahel
Goodwin; but not recorded until after alteration. The defend-
ant contended that the deed was made running to Harriet Good-
win, wife of Asahel. The plaintiff claimed that in 1870 Asahel
Goodwin went to Chester, N. H., where the Freemans were
then living, and in the absence of Gersham, told George that he
was in difficulty, and wanted to change the deed; and in the

presence of George, took the deed from his pocket and erased his name as grantee, and inserted the name of his wife, Harriet Goodwin; and that Gersham knew nothing of this change and never consented to it. When Asahel returned from Chester he caused the deed to be recorded, which showed the title in his wife Harriet. Before this transaction, judgment had been recovered against Asahel Goodwin in the U. S. Court at New York for the sum of $29,410 debt or damage, and $182.12 costs of suit. This judgment was recovered in May, 1868, and suit was brought on that judgment in the U. S. Circuit Court, District of Maine, returnable to the April term, 1871, and judgment was rendered for the plaintiff for the sum of $26,395.24 debt or damage, and $107.33 costs of suit. Execution did not issue until August 26, 1879. On the 14th day of July, 1879, John Goodwin, a brother of Asahel, brought suit in the Supreme Judicial Court of this state and an attachment of Asahel's real estate was made and duly recorded. The plaintiff, John Goodwin, at the January term, 1880, of the Supreme Judicial Court recovered judgment against Asahel for the sum of $1,241.48 debt or damage, and $11.75 costs of suit. Judgment was recovered on the 6th day of February, 1880, and on the 25th day of the same month the premises in dispute were levied upon as the property of Asahel, and set off to John Goodwin, the creditor, on the 28th day of February, 1880.

Emily Goodwin, the plaintiff in this action, and sister to John and Asahel Goodwin, offered further evidence showing that at the solicitation of Asahel Goodwin, on the 9th day of June, 1881, she purchased the premises from John Goodwin, and paid him $1,000. There were present at the time John and Asahel Goodwin, Nathaniel Marshall, the attorney of Asahel, and Mrs. Emily Goodwin. Asahel's wife was in and out of the room where the business was being transacted, the business being done in the house upon the premises, where Emily was living with Asahel and his wife, Harriet.

Asahel died in 1883. Emily and Harriet, Asahel's wife, continued to live upon the premises until Harriet's death in July, 1896, except in winters, when they both went to visit relatives.

December 27, 1894, Harriet Goodwin, while on a visit to Daniel
C. Norton, the defendant, made a will giving to said Norton all her
property, and appointing him executor of her will; at the same
time she executed and delivered to said Norton a warranty deed of
the premises, which deed was not recorded until July 9, 1896, two
days after Harriet's death, and about nineteen months after it was
delivered. There was evidence that no consideration was paid for
the deed to Norton. Immediately after the death of Harriet the
defendant took possession of the premises.

The contentions of the defendant and other facts are stated in
the opinion.

*Geo. F. and Leroy Haley; Josiah Chase;* for plaintiff.

1. The deed having been delivered to Asahel Goodwin, he
having paid the consideration, he being named therein as grantee,
the title passed to him, and the alteration of the deed without the
consent of all the grantors, did not divest him of his title. *Bartlett*
v. *Thorndike,* 1 Maine, 70; *Hall* v. *McDuff,* 24 Maine, 311; *Howe*
v. *Wilber,* 51 Maine, 226; *Bassett* v. *Bassett,* 55 Maine, 127;
*Chessman* v. *Whittemore,* 23 Pick. 231; *Kendall* v. *Kendall,* 12
Allen, 92.

2. If the change of the grantee's name in the deed without the
consent of Gersham, could pass the title to Harriet, in this case, if
Asahel was insolvent, it was a fraudulent transfer, as the debt for
which the judgment of John Goodwin was entered, was due at
that time, and the Cartwright judgment was in full force, showing
that his indebtedness was at that time at least $30,000. The land
could be levied upon as Asahel's. R. S., (1871) c. 76, § 13.

Norton, the defendant, claims under Harriet Goodwin by gift.
The evidence shows that Asahel Goodwin and John Goodwin took
plaintiff's money and deeded her this property. Harriet Goodwin,
under whom defendant claims, was in and out of the room. She
must have known that plaintiff was buying these premises. When
she deeded to Norton, they did not place the Norton deed upon
record, nor did they until two days after her death, for fear that
the plaintiff would learn of it. Harriet knew the plaintiff was

purchasing this property; she saw her pay $1,000 for the property; she and those claiming under her, without consideration, are estopped to deny her title.   *Chapman* v. *Pingree*, 67 Maine, 198.

*H. H. Burbank and J. C. Stewart*, for defendant.

Parol testimony is inadmissible to contradict deed: *Kimball* v. *Morrell*, 4 Greenl. 371; *Richardson* v. *Field*, 6 Greenl. 305; *Clark* v. *Waite*, 12 Mass. 439; *Jewett* v. *Persons unk.*, 61 Maine, 413; *Moses* v. *Morse*, 74 Maine, 474; *Farrar* v. *Farrar*, 4 N. H. 191.

Asahel Goodwin is estopped from setting up his own fraud; and the parties to that transaction are also estopped to deny that Harriet Goodwin paid the consideration named in the deed, in fact any part of the deed.   Kerr on Fraud, p. 374; *Campbell* v. *Knight*, 24 Maine, 334; *Foster* v. *Dwinel*, 49 Maine, 48; *Davis* v. *Callahan*, 78 Maine, 320; *Trull* v. *Skinner*, 17 Pick. 215; 8 Amer. and Eng. Enc. p. 23; *Parker* v. *Crittenden*, 37 Conn. 148; *Farrar* v. *Farrar*, 4 N. H. 191; *Tomson* v. *Ward*, 1 N. H. 9.

All parties named in the deed consented to the change made, by actual participation or subsequent acquiescence, including Harriet Goodwin who had no knowledge of the alteration at the time, (so far as appears in evidence,) but who subsequently accepted the delivery of the deed recorded May 14, 1870, and was until her death in possession of the premises conveyed.

Thus is her title valid; good as between all parties until equity intervenes.   *Com.* v. *Dudley*, 10 Mass. 403, and note p. 407; *Dana* v. *Newhall*, 13 Mass. 500; (a material alteration by consent is valid.)   *Hewins* v. *Cargill*, 67 Maine, 555; *Tomson* v. *Ward*, 1 N. H. 9; *Farrar* v. *Farrar*, 4 N. H. 191; *Penny* v. *Corwithe*, 18 Johns. 501; *Speake* v. *U. S.* 9 Cranch, 37; *Holbrook* v. *Tirrell*, 9 Pick. 105; 1 Addison's Contr. p. 551 (citing § 388, Pigot's case); *Boston* v. *Benson*, 12 Cush. 63; *Trull* v. *Skinner*, 17 Pick. 215; 1 Greenl. Ev. § 568, a; *Master* v. *Miller*, 1 Smith's L. C. 963–5; *Smith* v. *Crooker*, 5 Mass. 538; *Chadwick* v. *Eastman*, 53 Maine 16; *Willard* v. *Clark*, 7 Met. 437; *Adams* v. *Frye*, 3 Met. 104.

These premises, having been thus conveyed to Asahel Goodwin's wife Harriet, by his procurement, even if paid for by him, cannot

be held by his heirs or assigns, nor taken as his property by subsequent creditors. R. S., (1857) c. 61, § 1; R. S., (1883) p. 524; *Spring* v. *Hight,* 22 Maine, 408; *Johnson* v. *Stillings,* 35 Maine, 428; *Davis* v. *Herrick,* 37 Maine, 398; *Winslow* v. *Gilbreth,* 50 Maine, 93; *Low* v. *Marco,* 53 Maine, 45; *Holmes* v. *Farris,* 63 Maine, 318; *Call* v. *Perkins,* 65 Maine, 442; *French* v. *Holmes,* 67 Maine, 195; *Hilton* v. *Morse,* 75 Maine, 258; *Merrill* v. *Jose,* 81 Maine, 23; *Berry* v. *Berry,* 84 Maine, 541; *Danforth* v. *Briggs,* 89 Maine, 319.

SITTING: PETERS, C. J., EMERY, HASKELL, WHITEHOUSE, STROUT, SAVAGE, JJ.

SAVAGE, J. Real action. At one time, George M. Freeman was the owner of the demanded premises. "To protect himself from his creditors," he conveyed them to his son Gersham C. Freeman. Later the father and son joined in a deed of the same to Asahel Goodwin, who went into possession. At a still later date, as appears by the testimony of George M. Freeman, Asahel Goodwin took this last named deed, which had never been recorded, to George M. Freeman, who was one of the grantors, and said he "had got into difficulties, and would like to alter it." Thereupon, in the presence of this grantor, he erased his own name, "Asahel," from the deed, and inserted in its place the name of "Harriet," his wife. Harriet was not present, and it does not appear that she, at that time, had any knowledge of the transaction. This deed in its altered form was recorded May 14, 1870, and has since become lost. On July 14, 1879, the premises were attached as the property of Asahel Goodwin in the suit of John Goodwin, who subsequently levied upon the same. No objection is raised to the regularity of the levy. John Goodwin conveyed to the demandant in 1881. Harriet Goodwin conveyed to the tenant·in 1894, and he is now in possession.

Asahel Goodwin and his wife Harriet, and his sister Emily, the demandant, lived together upon the premises for many years, and we think there is not sufficient evidence upon which to base a title

by disseisin in either Harriet or Emily as against the other. In fact, neither party seriously claims it.

The first point made by the tenant is that the testimony of George M. Freeman, one of the grantors, is inadmissible to show the alteration in the deed. We think otherwise. His testimony does not tend to vary or contradict or avoid the deed which he made. It serves rather to show exactly what that deed was. Nor do his statements come within the rule excluding declarations, to which the tenant has cited several authorities. His statements are found in his sworn testimony. They are not declarations. They support the original deed, and prove that Asahel was the grantee named therein.

Furthermore, the tenant contends that the effect of the alteration in the deed, and the acceptance of it in its altered form by Harriet, was to vest the title in her. We do not think so. It is unnecessary to inquire what might have been the effect if all of the parties to the unrecorded deed had consented to the alteration and to the delivery to Harriet. Such is not this case. Prior to the execution and delivery of the deed to Asahel, the title was in Gersham C. Freeman. Although it had been conveyed to him by his father to defraud the latter's creditors, still, as against his father, his title was absolute. He alone could convey.

It does not appear that Gersham, the essential grantor, ever consented to the alteration, or even knew of it. It seems clear to us that without his consent, no alteration by the grantee could have been effectual to vest the title in Harriet. She therefore took no title by grant from Gersham. The alteration was ineffectual. We think the rule is as stated by Mr. Greenleaf: " If the grantee of land alter or destroy his title deed, yet his title to the land is not gone. It passed to him by the deed; the deed has performed its office as an instrument of conveyance, and its continued existence is not necessary to the continuance of the title in the grantee; but the estate remains in him until it has passed to another by some mode of conveyance recognized by the law." 1 Greenl. on Evidence, § 568.

Lastly, the tenant insists that the demandant, claiming under

Asahel, is estopped to set up a title against those claiming under Harriet. If we assume that Harriet had no knowledge that the deed ran originally to Asahel and had been altered by inserting her name as grantee instead (an assumption not supported by any great degree of probability under the circumstances of this case,) still we think the tenant cannot be aided by the doctrine invoked. There is no proof that Harriet was deceived, or misled, or prejudiced by the conduct of Asahel. There is no proof that she did any act in consequence of it, or any act whatever with reference to the premises, except to continue to live upon them with Asahel, her husband. There is no proof nor presumption that she paid any part of the consideration for the original conveyance, nor that she paid any consideration for the attempted transfer to herself. The transactions were without consideration, so far as she was concerned. There is an entire lack of some of the essential elements of an equitable estoppel. The tenant stands in no better position than Harriet, his grantor. He is merely her donee. He took only such title as she had.

It is the opinion of the court that the title to the demanded premises remained in Asahel, notwithstanding the alteration of the deed, and passed by levy from him to John Goodwin, and from John to the demandant.

*Judgment for demandant.*