---

# CHARLESTON.

ALBERTINE ANDRE v. GEORGE HOFFMAN *et als.*

Submitted February 5, 1918. Decided February 12, 1918.

1. DEEDS—*Forged Deed—Title.*

    Neither the grantee in a forged deed nor those claiming under him by virtue thereof can acquire any title to real estate thereunder. (p. 630).

2. CANCELLATION OF INSTRUMENTS—*Forged Deeds—Equity Jurisdiction.*

    Equity has jurisdiction to cancel a forged deed purporting to convey real estate, and all deeds purporting to grant title to such real estate made subsequent to and dependent upon such forged deed, as clouds upon the title of the real owner. (p. 630).

3. DEEDS—*Forgeries—Evidence.*

    A case in which it is established by the evidence that the deeds sought to be set aside by the plaintiff, which purport to convey her title to real estate, are forgeries. (p. 626).

Appeals from Circuit Court, Wood County.

Suits by Albertine Andre against George Hoffman and others. Decree for defendants in one suit, and plaintiff appeals, and decree for plaintiff in the other, and defendant Buckeye Savings & Loan Company appeals.

*Decree in first-named suit reversed, and entered for plaintiff, and cause remanded, and decree in second suit affirmed.*

*M. J. Cullinan,* and *D. B. Leonard,* for appellant..

*Marshall & Forrer,* for appellee Citizens' Bldg. Ass'n.

*Kreps, Russell & Hiteshew,* for appellee Smith.

*Jas. S. Wade, George S. Wallace* and *Philip P. Gibson,* for appellant.

*M. J. Cullinan* and *D. B. Leonard,* for appellee.

RITZ, JUDGE: .

The determination of the questions presented on these appeals involves the application of identical legal principles to states of facts differing only in that different parties are involved; wherefore they will be considered together.

The plaintiff at one time lived in the city of Parkersburg. She is an alien unable to write the English language, and scarcely able to speak it. More than twenty years ago her husband died leaving her with four children. She received two thousand dollars from a policy of insurance upon the life of her husband. At that time she owned a small property in the city of Parkersburg, and with the proceeds of this insurance policy, as well as with other funds which she had, she constructed an additional house upon this property, which she rented.' A short time thereafter she bought another property upon which there was a small house, which she likewise rented. With the rents derived from these properties, as well as from her savings and the earnings of her children, she purchased a vacant lot in the city of Parkersburg, and was the owner of all three of these properties at the time she removed to the city of Wheeling about the year 1908, said removal being occasioned by one of her sons

securing a very advantageous position in that city. She continued to reside in the city of Wheeling with her two sons, her daughters having married and left home, until the year 1910, when her son Karl died. Her other son Julius was both deaf and dumb, and on this account was scarcely able to transact any business. He was, however, employed as a printer and made fairly good wages at that trade. Prior to the death of her son Karl he looked after all of her business affairs for her, rented her property in Parkersburg, collected the rents, kept the taxes paid, and kept the property insured. It appears that at the time of his death there was a lien on one of the Parkersburg properties amounting to the sum of one thousand dollars, and a lien on another one amounting to the sum of two hundred dollars. Her son Karl had a policy of insurance in the sum of three thousand dollars on his life, payable to his mother, which was duly collected. The defendant George Hoffman it appears was a member of the same mutual benefit society to which the plaintiff's son Karl belonged, and was a member of a committee of said society charged with looking after the sick members and paying the sick benefits provided to be paid to them. During the illness of Karl, Hoffman came to the plaintiff's residence very frequently and paid to Karl, or to his mother for him, the sum of five dollars each week for such sick benefits. Karl's illness lasted for thirteen weeks, and by reason of the defendant Hoffman's frequent visits to the house during this illness he became very well acquainted with the plaintiff, so well acquainted that he took upon himself the matter of arranging for the funeral, and relieving the plaintiff from the cares with which she ordinarily would have been burdened on an occasion like this. His conduct during the illness of Karl and afterward caused her to repose great confidence and trust in him. Shortly after the death of her son Karl she desired to secure the services of an attorney to assist her in straightening out her affairs and collecting the insurance on the life of her son, and for this purpose she 'phoned to a friend of hers to send her an attorney. In response to this request Mr. O'Brien, an attorney of the city of Wheeling, came to see the plaintiff. She told him what she desired, and

he made an engagement for her to call at his office where the matter could be taken up more in detail and the arrangements completed.  Hoffman was present on this occasion, and after O'Brien left the house he advised the plaintiff that she was making a mistake in employing a lawyer, who would simply cheat her out of her property, or, if he didn't do that, would charge her five hundred dollars for doing what he, Hoffman, would willingly and gladly do for nothing.  The plaintiff thereupon accepted Hoffman's proferred offers of service.  He prepared for her, or had prepared, proper proofs, and had the life insurance money collected.  She gave him the title papers to her property in Parkersburg, and he advised her that he would go to Parkersburg and make himself conversant with all of the facts in regard to it, and look after it for her.  When the insurance money, amounting to the sum of three thousand dollars, was paid over to her, it came through Hoffman.  In the interim, between the time of making the application for payment of the money and the actual payment of it, Hoffman, it appears, had gone to Parkersburg to acquaint himself with the condition of the plaintiff's property there.  On the occasion that the money was paid over to her he advised her that there was a lien of one thousand dollars still unpaid on one of the properties, which would require with the interest a little more than one thousand dollars to pay; and a lien of two hundred dollars on one of the other properties.  On his advice she gave him the money out of the three thousand dollars with which to discharge these liens. Hoffman had made all the arrangements for the funeral of plaintiff's son Karl, and advised her that the expenses attending the same amounted to some four hundred dollars, and this amount was paid over to him to discharge these liabilities.  This left about the sum of fifteen hundred dollars remaining of the money received from the life insurance policy, and the defendant Hoffman advised the plaintiff that inasmuch as her son Julius was deaf and dumb, and was less able to take care of himself than her daughter who was married, she should give that amount to Julius, so that in case she died Julius would have that much advantage over her daughter in the distribution of her estate.  She followed Hoffman's ad-

vice in this regard and deposited this residue in a savings bank to the credit of her son Julius. It is shown by an officer of the bank that a very short time thereafter this entire amount was paid out to Hoffman on checks drawn by Julius in his favor. Hoffman continued to carry on the plaintiff's business for her, that is, looked after the renting of her properties at Parkersburg and kept them in repair, and paid over to her at various times various sums of money as the proceeds of the rents arising from said property. He continued to do this until the year 1913. In the year 1913 the plaintiff was called to the office of the Buckeye Savings & Loan Company, in Bellaire, Ohio, and was there informed that there were deeds on record in Wood county conveying her property situate in the city of Parkersburg to the defendant Hoffman and his infant daughter, the defendant Lillian Katherine Hoffman. Plaintiff says this was the first information she had of any such deeds. These deeds were dated in April, 1910, more than three years before. Upon having investigation made she found that it was true that there was a deed purporting to be from her, conveying to the defendant George Hoffman the property involved in the first above entitled cause, and a deed from the said George Hoffman to his daughter Lillian Katherine Hoffman, both of these deeds being dated in April, 1910; that there was likewise a deed on record conveying to the defendant Lillian Katherine Hoffman the real estate involved in the second above entitled cause. It appears that after the making of the deeds above referred to a loan was obtained upon the property involved in the first above entitled cause from the defendant Citizens Building Association, of Parkersburg, for the sum of five hundred dollars, and a deed of trust executed by Lillian Katherine Hoffman and George Hoffman, her husband, to trustees, to secure the payment of this loan. Default having been made in the payment of the lien, in accordance with the terms of the contract, the deed of trust was foreclosed and the property purchased by the defendant N. L. Russell for the sum of five hundred dollars, and in a few days thereafter was by him sold and conveyed to the defendant A. R. Smith for the sum of fifteen hundred dollars,

and another loan made thereon to the said Smith by the defendant Citizens Building Association for the sum of one thousand dollars, in order to assist him in paying the purchase money therefor; that the defendant Hoffman obtained a loan on the property involved in the second above entitled cause of the sum of one thousand dollars from the defendant Buckeye Savings & Loan Company, and executed a deed of trust to secure this loan in the name of George Hoffman and Lillian Katherine Hoffman, his wife. These suits were then brought by the plaintiff to set aside the conveyances purported to have been made by her, as above stated, and all subsequent conveyances affecting said real estate, and to revest the title thereto in her.

She alleges in her bills and amended bills, which are similar in allegation in both cases, that she never executed and acknowledged any deed to George Hoffman, or to his infant daughter, the defendant Lillian Katherine Hoffman, for either of these properties. She alleges fully the relation of trust and confidence which existed between her and the defendant George Hoffman, and she makes the further allegation in her bills that if the defendant George Hoffman has a paper in the form of a deed with her name signed to it, which she does not admit, he procured the same by fraud and deceit; that there never was any sale or transfer of the property to him or to his daughter. The reliance of the defendant Smith, the present owner of one of the properties, and of the Buckeye Savings & Loan Company, which holds a lien on the other, is that they are innocent purchasers of this property without notice of any fraud practiced upon the plaintiff by the defendant Hoffman. They contend that the bills are not sufficient in their allegations to charge that the deeds from the plaintiff are forgeries, and even if such allegations are sufficient for that purpose, still the proof does not sustain the same. They claim that these deeds were procured from Mrs. Andre by Hoffman by false and fraudulent representations, insisting, however, that she actually executed the deeds believing them, perhaps, to be some other sort of papers; and they contend that notwithstanding the fact that one of these deeds was made to the five-year old daughter of the defendant

Hoffman, and that the property purporting to be conveyed to Hoffman by the other was by him immediately conveyed to the same five-year old daughter, the effect of the deed of trust executed by George Hoffman and Lillian Katherine Hoffman, his wife, was to convey any title which either he or his infant daughter had in these properties. The truth of the matter is admitted to be that Hoffman did not have a wife at that time, she having died several years before. They insist that he was simply using his infant daughter as a subterfuge, and that she stands in the position of a fictitious person; that the deed from Mrs. Andre to her, instead of conveying the title to her, conveyed it to George Hoffman, and that the deed from George Hoffman to her was void and conveyed no title.

The first question presented is, do the bills sufficiently allege that these deeds are forgeries? It must be borne in mind that the plaintiff at the time she filed her bills had not access to the original deeds. She sets up at considerable length and with great clearness her exact relations with Hoffman during all the years that she knew him, and she denies in her amended bills that she ever made a sale of these properties to Hoffman, or that she ever executed a deed to him therefor; and she further avers that if there is a paper purporting to be a deed conveying said properties with her name signed to it, which she does not admit, the same was procured from her by fraud. It will be perceived from this that the plaintiff in making the allegations of her bill proceeded with extreme care, and did not want to put herself in an attitude where she could not rely on anything but the fact that she had not executed the papers. She, no doubt, thought, and her bills show this to be the case, that it might have been possible for Hoffman to have procured her signature to such deeds by representing falsely and fraudulently to her that they were something else, and she desired to have advantage of such an allegation in her bill if it should turn out on an inspection of the deeds that she had signed the same. If the allegations of the bills are true, the conclusion is irresistible that these deeds are forgeries. Does the evidence offered prove these deeds to be forgeries? We are not

unmindful of the fact that in order to establish that a deed is a forgery the evidence must be clear and convincing, and must leave no substantial doubt as to the fact that the purported grantor did not execute the deed attacked. We have carefully reviewed the evidence in these cases, and are entirely satisfied therefrom that the plaintiff in this case never executed the deeds referred to. She denies positively in her testimony that she executed them. It is true on cross examination she says that Hoffman had great influence over her, and that she had great confidence in him, and would have signed any paper that he produced and advised her to be a paper proper for her to sign, and from this counsel argue that she likely signed these deeds under the impression that they were something else. A consideration of the testimony of the plaintiff shows that while she is illiterate and to an extent unsophisticated, she has a very accurate memory, as is the case with many illiterate people, and she testified from her recollection as to the papers which she did execute for Hoffman, one being what Hoffman explained to her as a power of attorney to collect her rents, which was executed about the time he took over her business affairs in the spring of 1910; the next was a deed executed in the year 1911 when a lot was sold to a man by the name of Bush; and the only other paper was a writing authorizing Hoffman to collect some money due her from a factory where some men were working who had been boarding with her. If it is true that these papers were all the papers she ever executed for Hoffman, then it is impossible that these deeds were executed by her, for the reason that there were three of these deeds all executed in the month of April, 1910, and according to her testimony as to the papers she executed she only executed one paper in that year. She is further supported in her testimony by the testimony of the officer before whom the acknowledgements of these deeds purported to have been taken. He did not have a very definite recollection of the appearance of the party who did acknowledge them as Mrs. Andre, but he did testify that he never had seen Mrs. Andre before the time she came to his office after the institution of these suits, and that she was not the party who had acknowledged these

deeds. It must also be borne in mind that after the purported execution of these deeds by the plaintiff, defendant continued to pay her the rent on the properties, never making any claim to her that he owned them, or had any interest in the world therein. Further, it is shown that the deeds from himself and Lillian Katherine Hoffman, purporting to be his wife, were made by him and procured to be executed by some woman representing herself to be his wife, when in fact he was a widower, and had no wife. It is also shown that when Mrs. Andre sold the lot in Parkersburg to Bush he procured her to execute a deed for this lot, when in fact he already had a deed in his own name, or in the name of his daughter, therefor. If it had been genuine he never would have had her execute another deed. The fact that she knew that a deed was rquired to convey the lot made it necessary to have her execute the deed when the sale was made, else she might become suspicious and discover his other forgeries. It further appears that with the proceeds of this lot sold to Bush Mrs. Andre in part paid for a house and lot purchased by her in Warwood, and that Hoffman looked after this transaction for her and made the purchase. It turned out that instead of having the house and lot in Warwood conveyed to Mrs. Andre, Hoffman had it conveyed to his mother, and upon the plaintiff's discovery of this and her demand therefor he caused it to be conveyed to the plaintiff. There are many other instances of less prominence which characterize the transactions of Hoffman in regard to this real estate as being based upon forgeries and frauds of the very worst character. Hoffman is a party to these suits. He filed an answer herein. It is shown that he is still living in the city of Wheeling, and that his testimony is available to the defendants, but they did not take it to controvert in any way any of the statements or circumstances proven to show these forgeries. This failure of Hoffman to testify, the defendants argue should not be charged to them. They say that it was as much the duty of the plaintiff to produce his testimony as it was their duty to do so. This cannot be true. The plaintiff is not claiming under Hoffman and they are; they are attempting to support a title which they got through Hoffman, and the plaintiff is

attempting to destroy it, and it was their duty to produce the
very best evidence they could in support of their title when
it had been so violently attacked as it was by the testimony
in this case.    When it is shown that Hoffman's testimony
was available we must conclude that if they had produced it
it would have been in favor of their adversaries.    The cases
of *Swiger* v. *Swiger,* 58 W. Va. 119, and *Hill* v. *Horse Creek
Coal Land Co.,* 70 W. Va. 221, are cited by the defendants for
the proposition that the evidence in this case is not sufficient
to establish these deeds as forgeries.    In the Swiger case the
court held that the testimony of the grantor in a deed sup-
ported by nothing but the evidence of experts as to the hand-
writing was not sufficient to justify setting aside the deed.
That declaration must be read in the light of the facts in that
case.    The grantor there denied the execution of the deed,
and introduced the evidence of some handwriting experts in-
dicating that the handwriting was not that of the grantor.
On the other hand, in support of the deed four witnesses tes-
tified that they were present when the grantor delivered the
deed in person to the grantee, and it was held upon that state
of facts, of course, that the deed would not be overthrown.
In the case of *Hill* v. *Horse Creek Coal Land Co.* all the evi-
dence that was offered against the deed was the testimony of
the grantor therein that the signature thereto was not genu-
ine.    This testimony was contradicted by the testimony of
the officer before whom the acknowledgment was taken to
the effect that the deed was acknowledged before him by the
grantor, and while it had been twenty-nine years before, and
he could not recollect about the particular transaction, he
knows and states positively that he never signed a certificate
of acknowledgment except where the party making the same
appeared before him and made it.    No such conditions exist
here.    In this case the testimony of the alleged grantor is
corroborated by other admitted forgeries committed by the
grantee in connection with the same transaction, by many
other fraudulent and deceitful practices of his in connection
therewith, by the testimony of the officer before whom the
acknowledgment was taken that Mrs. Andre was not the wo-
man who acknowledged it, and is further corroborated by

the fact that Hoffman, though a party to the suit and available, does not testify in support of the deeds. We are clearly of the opinion that these deeds are forgeries and that the same should be cancelled as clouds upon the plantiff's title.

Counsel in these cases have discussed elaborately in oral argument and by briefs the rights of purchasers for value without notice. This discussion, however, is based upon the theory that these deeds were actually executed by Mrs. Andre. It is not contended that a purchaser for value without notice that a deed is a forgery can acquire any title to the property conveyed by the forged deed. In view of the conclusion we have reached that these deeds are forgeries, it would be improper for us to enter upon a discussion of a phase of the law not applicable to the case which we find established by the facts.

The defendant Citizens Loan Association contends that it should be subrogated to the rights of the holder of the lien existing on the property involved in the first above entitled cause, by reason of the fact that money borrowed from it by Hoffman was used in part to discharge this lien. The facts in this regard seem to be that at the time Hoffman took charge of Mrs. Andre's property there was a lien of one thousand dollars upon one of the properties. To discharge this debt and the interest it required a little more than one thousand dollars. Hoffman ascertained the amount necessary for this purpose, and it is undisputed that the same was paid over to him by Mrs. Andre for the purpose of discharging this lien. If he appropriated part of this money to another purpose and borrowed money from the defendant Citizens Loan Association to make good his embezzlement of the funds entrusted to him, the plaintiff cannot be held responsible therefor. There is no basis in this case upon which to found an equity in favor of the Loan Association against Mrs. Andre. She received absolutely no benefit from the money it furnished to Hoffman, and the loan association was under no obligation to pay this debt for Mrs. Andre. It might be that if the association's money was used to pay off a lien on the plaintiff's property, and she had not furnished Hoffman money to discharge that lien, the association in equity could be substi-

tuted to the rights of Hoffman against her upon the theory that she received the benefit from it. In this case, however, she received absolutely no benefit from the loan made by the defendant association to Hoffman.

It follows from what we have said that the decree of the circuit court of Wood county entered in the first above entitled cause will be reversed and a decree entered here annulling and cancelling the paper writing purporting to be a deed from the plaintiff to the defendant Hoffman for the property referred to and described in the proceedings, as well as cancelling and annulling all of the deeds made subsequent thereto and referred to in the bill and proceedings herein, and this case remanded to the circuit court of Wood county for the purpose of taking such accounts as may be necessary to ascertain the amount plaintiff is entitled to recover for the use of her property during the time she has been deprived thereof. In the second above entitled cause the decree of the circuit court of Wood county will be affirmed.

*Decree in first suit reversed and entered for plaintiff, and cause remanded. Decree in second suit affirmed.*