# CHARLESTON.

H. A. BARBEE *v.* G. E. AMORY *et als.*

(No. 5989)

Submitted November 20, 1928.   Decided December 11, 1928.

508

*Hogg & Hogg,* for appellant.

*B. H. Blagg* and *Musgrave & Blessing,* for appellees.

MAXWELL, JUDGE:

By his bill in this suit the plaintiff sought to have cancelled and set aside a deed purporting to have been executed by him and others to the defendant, G. E. Amory, and a deed of trust from said Amory conveying the same property to a trustee to secure the defendant, Walter E. Lewis, in his endorsement on a note made by Amory, and to enjoin the sale of the property in question under the trust deed. From a decree dissolving the temporary injunction granted on the bill and dismissing the same, plaintiff prosecutes the present appeal.

In May, 1923, the plaintiff purchased at judicial sale a tract of land, paying the cash consideration required by the decree of sale, and gave his notes for the balance of the purchase price, the legal title to the property to remain in the special commissioners making the sale until payment in full of the notes. Plaintiff laid the land off into city lots, and by special arrangement with the commissioners, Chas. E. Hogg and L. C. Sommerville, it was provided and subsequently approved by decree of court that plaintiff might make sales of the lots upon payment of the full sale price of each lot to the commissioners, to be credited on his notes until discharged, whereupon he and the commissioners were to execute deeds to his

purchasers. Between the middle of the year 1923 and the fall of 1925 a number of the lots were sold pursuant to this arrangement, through the Cammack Sales Agency, the defendant Amory acting for the sales agency. Some time early in the year 1926 plaintiff discovered that lots Nos. 25 and 26 of his said sub-division were advertised for sale under a deed of trust purporting to have been executed by Amory and wife to secure a note of Amory to the defendant, Walter E. Lewis. Upon investigation, plaintiff learned that a deed, dated September 28, 1923, for lots 25 and 26, purporting to have been executed by himself and wife and the commissioners to Amory, had been admitted to record September 11, 1925.

Plaintiff claims that the deed is a forgery; that he kept a record of all completed sales, which record does not show such a sale to Amory; and he testified that some time in the late summer or fall of 1925, Amory furnished to him a map on which all of the lots sold were checked off, and that lots 25 and 26 were not checked. It appears that some deed were executed for lots not actually taken by the purchasers reported by Amory, and it is not clear what disposition was made of these deeds. Plaintiff did not know what became of such deeds, but swears positively that at no time did Amory ever report a sale of lots 25 and 26 to himself, and that he did not receive payment for these lots. He says that the deeds usually consisted of two or three pages, and that the signatures and acknowledgments, as a rule, constituted the last page, making it possible to attach that page to any other paper.

Charles E. Hogg, one of the commissioners making sale of the property to plaintiff, testified that in most instances he kept carbon copies of all deeds written, but that he had in his files only one copy of a deed made to Amory as sole grantee, and it was for other lots. There was another deed to Amory and Musgrave jointly.

The defendant Lewis testified that when he obtained for Amory from a bank in the town of Buffalo, Putnam county, the loan, to secure which he indorsed Amory's note and took the deed of trust here involved, Amory showed him a deed for the property in question, which bore the county clerk's certificate of recordation. This was either September 11 or 12,

1928. The deed of trust was dated September 11th, and was admitted to record the next day. Lewis had formerly purchased eight of the Barbee lots.

The clerk of the county court testified that the deed in question was admitted to record September 11, 1925, and that on the margin of the record book there appeared these words: "September 28, 1925, delivered to Russell Stone, Phoenix Restaurant, Point Pleasant, W. Va." Stone says that one day as he was leaving the restaurant while Amory was eating dinner after one o'clock, the latter asked the witness to stop at the county clerk's office and get a deed for him before returning, and that he did so. He knew nothing of the contents.

Mrs. Amory swears positively that she did not sign nor acknowledge the deed of trust securing Lewis; in fact that she had never heard of such an instrument, nor of the supposed ownership by her husband of the lots in question. She had lived at Huntington for the past four years, and had been in Point Pleasant where the notary took the acknowledgment several times, but could not say definitely whether she was there September 11, 1925, but didn't think she was. When asked whether the deed of trust was acknowledged before him G. E. Amory and Myrtle Amory, the notary, after examining the papers, answered: "Yes, sir. She may have acknowledged it by telephone, I do not remember."

At the time of taking the depositions no one knew of the whereabouts of Amory; even his wife did not know where he was. The deed in question seems to have disappeared with him.

It is not clear on what ground the circuit court found for the defendants. The final decree, after dissolving the injunction and dismissing the bill, further recites: "But nothing herein contained shall be considered to prejudice the rights of the plaintiff, H. A. Barbee, to bring such actions against the said G. E. Amory as he may be advised, to recover from the said G. E. Amory any sums due him from the said Amory by reason of any matters complained of in his said bill."

It is not clear from the above provision, whether or not the trial court found the deed in question to be a forgery. If the court did find it to be forged, it is evident that the de-

fendant Lewis' theory, that where one of two innocent persons must suffer, he who put it in the power of another to do the wrong must bear the loss, must have controlled the decision.

We think the evidence amply sufficient to support a finding of forgery. Plaintiff says the lots in question were not sold to Amory, and that he knew nothing of Amory's claim to them until he discovered the advertisement of sale under the deed of trust; and that he immediately began an investigation. Commissioner Hogg had no record or recollection of such sale, while he had copies of other deeds. And Amory's conduct in the whole transaction tends to confirm the fact of forgery, by alteration or otherwise. His map, made nearly two years after the date of the deed, showed the lots unsold; and he and plaintiff together checked the map. Amory's wife knew nothing of the alleged sale to her husband, and denied signing or acknowledging the deed of trust. Amory held the deed unrecorded until after he had made arrangement with Lewis for the loan through him, and put in on record the day he made the deed of trust. The deed of trust could not have been delivered later than September 12th, for it was admitted to record that day. What recorded paper did Amory show to Lewis? The deed in question was not presented for recordation until September 11th. If Lewis saw it at all, it must have been exhibited to him on the 11th or 12th; but the records in the office of the county clerk show that the deed was not removed from that office until September 28th. How could Amory have shown to Lewis the deed recorded September 11th? It is evident that Amory deceived him in some manner. And, Amory disappeared shortly after the transaction. We are of opinion that he in some manner fabricated the paper admitted to record.

Either the fraudulent making or altering of an instrument of legal import to the prejudice of another's rights is forgery. *State* v. *Talip and Homad,* 90 W. Va. 632; *Merch. Bank & Trust Co.* v. *Peoples Bank,* 99 W. Va. 544; *State* v. *Sotak,* 100 W. Va. 652; and authorities cited. And it has been held that the insertion by one not authorized of his own name in a deed already executed and signed, constitutes forgery.

*Pry* v. *Pry,* 109 Ill. 466; *Goodwin* v. *Norton,* 92 Me. 532; 4 Thompson on Real Property, sec. 3995.

What, then, are the rights of an innocent purchaser for value or of a mortgagee holding title under a forged deed? In *Andre* v. *Hoffman,* 81 W. Va. 620, it is held: ''Neither the grantee in a forged deed nor those claiming under him can acquire any title to real estate thereunder.'' See, further, 2 Devlin on Real Property, (3rd ed.), sec. 726; Kerr on Fraud and Mistake, p. 314; *Van Amringe* v. *Morton,* 4 Wharton, (Pa.), 382, 34 Am. Dec. 517; 18 C. J., p. 242. In *Andre* v. *Hoffman, supra,* it was also held that: ''Equity has jurisdiction to cancel a forged deed purporting to convey real estate, and all deeds purporting to grant title to such real estate made subsequent to and dependent upon such forged deed, as clouds upon the title of the real owner.'' In such situation a purchaser is not protected by the fact that he has acted in good faith. A forged deed is a nullity and any title derived thereunder is also null. 2 Pomeroy's Equity Jurisprudence, (4th ed.), sec. 767, note; *Devlin, supra.*

The defendant Lewis invokes the rule that where one of two innocent persons must suffer, he who puts it in the power of another to do the wrong must bear the loss. This principle has no application in the case of forged instruments. Many American and English cases so hold. *Walsh* v. *Hunt,* 120 Cal. 46, 39 L. R. A. 697; *Merchants National Bank* v. *Balto., C. & R. Steamboat Co.,* 102 Md. 573, 64 Atl. 108; *Wood* v. *Steele,* 73 U. S. 80, 18 Law. Ed. 725; *King* v. *Sparks,* 77 Ga. 285, 4 A. S. R. 85; *Bank* v. *Stowell,* 123 Mass. 196, 25 Am. Rep. 67; *Penna. etc. Co.* v. *Franklin Fire Ins. Co.,* 181 Pa. St. 40, 37 L. R. A. 780; *Marden* v. *Dorthy,* 160 N. Y. 39, 46 L. R. A. 694; *Swan* v. *N. B. Australasian Co.,* 2 Hurls. & Colt. 176; *Baxendale* v. *Bennett,* 3 Q. B. Div. 530. This rule as to forged or altered instruments applies to deeds as well as to negotiable paper. *Walsh* v. *Hunt, supra.* The case just cited and the case of *Merch. Nat'l. Bank* v. *Balto. C. & R. Steamboat Co., supra,* hold, in substance, that where an agent betrays his trust and commits a forgery to the prejudice of his principal and another, even though the act of the agent was facilitated by negligence of the principal, it is the crime

of the agent, and not the negligent act of the principal that is the proximate cause of the injury. Barbee can not be held to have anticipated or foreseen Amory's criminal conduct, and even if Barbee was negligent in intrusting to Amory the delivery of signed and acknowledged deeds Barbee is not thereby precluded from equitable relief though the rights of Lewis as an innocent purchaser subsequently intervened. No one is held guilty of negligence for the result of an act, which result could not reasonably have been anticipated. *Donald v. Coal Company,* 86 W. Va. 249; 10 Enc. Dig. Va. & W. Va. Rep. 375. As said by Cockburn, C. J., in *Swan* v. *N. B.·Australasian Co.,* cited, *supra:* ''Here, nothing can have been further from the intention of the plaintiff, than that the deed signed by him should be used for the purpose of transferring these shares, or that the name of another person should be substituted for him on the register. * * * It seems to me scarcely enough to constitute negligence, that he did not contemplate, and therefore render physically impossible, the felonious act of his agent in possessing himself of the certificates.''

The plaintiff is entitled to have the injunction perpetuated and the deed and deed of trust cancelled as clouds upon his title. We, therefore, reverse the decree and remand the cause for further proceedings in accord herewith.

*Reversed and remanded.*